**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raymond S. MATHISON, Defendant-**
**Appellant.**

**No. 11836.**

United States Court of Appeals
Seventh Circuit.
Dec. 13, 1956.

Meyer M. Cohen and Robert J. Parins, Green Bay, Wis., for appellant.

Edward G. Minor, U. S. Atty., William J. Haese, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

Defendant Raymond S. Mathison was charged in a five-count indictment with a violation of Title 18 U.S.C.A. § 2421 (the White Slave Traffic Act, commonly known as the Mann Act). Each count charged the transportation in interstate commerce between the states of Michigan and Wisconsin of Myrna Lee Paulsen for the "purpose of prostitution and debauchery and other immoral purposes." Defendant on trial by jury was acquitted on counts 3 and 5 and convicted on counts 1, 2 and 4. Judgment was entered accordingly, from which defendant appeals.

Without question, the transportation took place as alleged in each count. Defendant's sole contention, vigorously pressed in this court, is that the proof was insufficient to justify a conviction on counts 1 and 4, and that the court erred in a denial of defendant's motion for a directed verdict as to those counts. Defendant's contention as to count 2 is that the prosecuting attorney in his closing argument to the jury made improper and prejudicial statements, which requires a reversal.

We think it unnecessary to relate in detail the sordid picture disclosed by the record. It is sufficient that we have carefully examined the proof in connection with the contentions pressed by defendant and have reached the conclusion that the proof was not sufficient to justify the submission of count 1, that it was sufficient as to count 4, and that there is no sound basis for a reversal as to count 2.

The period covered by the indictment extended from July 1, 1955 (the date of the transportation alleged in the first count) to October 16 of the same year (the date of the transportation alleged in the fifth count). Defendant during that period and previously lived in Marinette, Wisconsin, where he was employed as an advertising salesman for the radio and television station in that city. Miss Paulsen, at that time a sixteen year old girl, lived in Menominee, Michigan, just across the state line, and was interested

in becoming a model. In fact, she had earned some money acting in that capacity and had posed for commercial pictures which were shown on television. Defendant had assisted her in obtaining such positions. During the spring of 1955, an intimate relationship was established between the parties and during that period and the following summer, including the time covered by the indictment, defendant had sexual relations with the girl on numerous occasions.

■■ The proof as it relates to count 1 consisted entirely of the testimony of Miss Paulsen and one John Larson, a professional photographer. On June 1, 1955 (the indictment charged July 1, 1955) defendant made arrangements with Larson to take some nude or semi-nude pictures of Miss Paulsen. He had previously taken pictures of her for use on television. For such purpose defendant transported Miss Paulsen, as alleged, to a motel, where they were met by Larson. There, in the presence of the two men, Miss Paulsen disrobed and the pictures were taken by Larson, the purpose of which, as testified to by him, was to ascertain if she had a figure which would warrant the pursuit of her career as a model. All the pictures thus taken were developed and retained by Larson except one which was given to defendant. After the pictures were taken, Miss Paulsen dressed and left the motel with defendant. She testified that she was embarrassed but not shocked at what happened and that she willingly submitted. No sexual act or conversation relative thereto occurred on the occasion; in fact, there was no proof of any improper act or suggestion by any of the parties other than the taking of the pictures. Larson testified that the pictures taken, from the standpoint of morality or decency, would have been acceptable to the usual camera study magazines which use that type of picture. In fact, one magazine commonly sold at newsstands was introduced in evidence, containing pictures of a nude woman quite similar to those taken of Miss Paulsen.

It is not necessary to cite cases in support of the well established rule that the intent or purpose to commit the prohibited acts must have been formulated in the state where the journey originated. The government concedes that such is the law. So we have the question as it relates to count 1, whether the proof justifies a finding that the transportation was for the purpose of "prostitution or debauchery, or for any other immoral purpose." We think the question must be answered in the negative. That must be so unless the mere taking of a picture in the nude is an "immoral purpose" as that phrase is used in the Act. Although the Act has been given a broad interpretation, we know of no court which has gone that far. What was done on the occasion under discussion might be considered by some as immoral but to others as entirely legitimate. The term, however, must be confined to its meaning as used in the Act. In Mortensen v. United States, 322 U.S. 369, 375, 64 S.Ct. 1037, 1041, 88 L.Ed. 1331, the court stated: "What Congress has outlawed by the Mann Act, however, is the use of interstate commerce as a calculated means for effectuating sexual immorality." In Cleveland v. United States, 329 U.S. 14, 17, 67 S.Ct. 13, 15, 91 L.Ed. 12, it was held that under the *ejusdem generis* rule of construction, the words " 'any other immoral purpose' " must be confined to the class of which they are a part. We realize that the testimony of the girl and the photographer may be treated with some cynicism. However, it is the only testimony concerning the charge under discussion. If disbelieved, there is no proof and, if believed, it does not, in our judgment, establish the character of immorality which the statute encompasses. As to this count, we think there should have been a directed verdict in favor of defendant.

■■ The fourth count alleges a transportation from the state of Wisconsin to that of Michigan. Defendant argues that there was no proof of an intention or purpose on his part to violate the

Mann Act prior to entering the latter state. In brief form the proof discloses that on this trip defendant and Miss Paulsen were accompanied by two other men, John Cannon and Robert Nelson. The last named was the proprietor of a filling station where the men met and had some drinks prior to the trip. The party left the filling station about ten o'clock at night, crossed the state line and drove about for an hour or more, when Miss Paulsen expressed a desire to be taken home. Before arriving there defendant drove onto a side road and at his urging and insistence both Cannon and Nelson had sexual relations with her. In Daigle v. United States, 1 Cir., 181 F.2d 311, 313, the court stated: "The evidence of prior moral derelictions with the girl involved, coupled with the evidence of their dereliction at the end of the trip, adequately supports the conclusion that from the beginning at least one of its purposes was illicit intercourse." In our view, the fact that the two men who accompanied defendant and the girl had sexual relations with her during the trip, coupled with proof as to defendant's long standing illicit relations with her, constituted the basis for a reasonable inference that defendant entertained the proscribed intent or purpose from the inception of the journey. At any rate, the issue was properly submitted and the proof in support of the charge is sufficient.

■ In support of the second count, Miss Paulsen testified that defendant had taken her from her home in Michigan to a motel in Wisconsin so that she might engage in sexual intercourse not with defendant but with a third party, one Curtis Sieloff. Sieloff was subpoenaed as a government witness but was confined in the hospital and unable to appear in court. In order to establish this fact,

his doctor was called as a witness and testified in the absence of the jury regarding Sieloff's physical condition and that he was not able to appear as a witness. During argument to the jury defendant's counsel commented on the fact that the government had not produced Sieloff as a witness in corroboration of the testimony of Miss Paulsen. In response to this contention the prosecuting attorney among other things stated, "The Doctor was here on the stand, and he testified that Mr. Sieloff was suffering a psychological ailment induced by fear of testifying at this trial. That's why Mr. Sieloff isn't here." Certainly there was nothing improper in the prosecutor informing the jury that the absence of the witness was due to the fact that he was ill and unable to be present. We think, however, the prosecutor went too far in advising the jury that his absence was because he "was suffering a psychological ailment induced by fear of testifying at this trial." Even so, we are not convinced that the statement was prejudicial. In any event, no objection was made to the statement and, in our view, it is not now entitled to serious consideration.

■ Defendant also argues that the trial court erred in denying his motion for a continuance on the premise that there had not been sufficient time to properly prepare his defense. We have examined the circumstances regarding this contention and find it without merit. As the cases universally hold, action on such a motion is a discretionary matter with the trial court. Certainly the record does not demonstrate any abuse of discretion.

The judgment rendered on the first count of the indictment is reversed and that rendered on the second and fourth counts is affirmed.