Robert James GARNER, Appellant,

v.

UNITED STATES of America,
Appellee.

Lester L. WEDDLE, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 16332, 16333.

United States Court of Appeals
Eighth Circuit.

April 13, 1960.

James L. McMullin, Kansas City, Mo., for appellants.

John S. Boyer, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before SANBORN, MATTHES and BLACKMUN, Circuit Judges.

SANBORN, Circuit Judge.

Robert James Garner and Lester L. Weddle have appealed from sentences of imprisonment imposed upon them August 7, 1959, based upon the verdicts of a jury finding both guilty of violating 18 U.S.C. § 2422, the so-called White-Slave Traffic Act.

The indictment under which they were tried contained three counts. Count I, under 18 U.S.C. § 371, charged the defendants (appellants) with a conspiracy to violate 18 U.S.C. § 2422 by causing two women, named Connors and Slater, to be transported by common carrier from Omaha, Nebraska, to Kansas City, Missouri, for the purpose and with the intent of having them engage in prostitution. Count II charged the defendant Weddle with violating 18 U.S.C. § 2422 by intentionally causing the woman Slater to go by common carrier from Omaha to Kansas City for the purpose of engaging in prostitution. Count III charged Garner with causing the interstate transportation of Connors with like intent and purpose, in violation of the same statute.

The jury found the defendants not guilty of the conspiracy charged against them in Count I. Weddle was found guilty under Count II, and Garner under Count III.

It is asserted on their behalf: (1) that there was an inadequate evidentiary basis for their conviction; (2) that each of the verdicts of guilty was ambiguous and duplicitous because inconsistent with the verdict of acquittal under Count I; (3) that the evidence of a Government witness was improperly admitted; (4) that the court erred with respect to its instructions. While the appellants' brief does not comply with our Rule 11(b), Third, 28 U.S.C.A., in that it quotes neither the evidence nor the instructions complained of in the appellants' statement of the case, we have, nevertheless, read the record and considered the appellants' contentions.

■ The facts out of which this case arose are neither edifying nor interesting. The evidence need not be stated in complete detail. It is, in general, typical of such cases. The Government, as the prevailing party, is, of course, entitled to the benefit of all reasonable inferences which can be drawn from the evidence tending to support the verdicts. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

Under the uncontradicted evidence, these two defendants had been immorally associated with the two women referred to in the indictment, in Omaha, Nebraska—Weddle with Slater, and Garner with Connors. Both women were prostitutes. On the night of May 12, 1959, the defendants and the two women took a Burlington train from Omaha to Kansas City, Missouri. After arriving at Kansas City on the morning of May 13, and after visiting a bar, the couples went to the Rasbach Hotel, where Garner and Connors registered as "Mr. and Mrs. John J. Quinn," and Weddle and Slater as "Mr. and Mrs. Larry Wilson." On May 15 they all left that hotel and registered at the Surrey Court Apartments, in Kansas City, Missouri—Garner and Connors as "Mr. and Mrs. B. Quinn," and Weddle and Slater as "Mr. and Mrs. L. Wilson."

At the trial, Slater testified for the Government. The only inference which reasonably can be drawn from her evidence and that of other Government witnesses is that she and Connors, accompanied by the defendants, in accordance with a preconceived plan, traveled from Omaha to Kansas City, Missouri, by train for the purpose and with the intent, on the part of the defendants, of having the women engage in prostitution; that after arriving in Kansas City, Weddle, through bellboys at hotels, solicited "dates" for Slater, and Garner solicited "dates" for Connors, and that both women engaged in prostitution.

The testimony of Slater was not uncorroborated. Champion, a bellboy at the Aladdin Hotel in Kansas City, testified that Garner, after having secured a job at that hotel as a bellboy, told Champion he had a girl, and gave him Connors' telephone number; that Champion and another bellboy arranged "dates" for her at the hotel; that on one occasion, after completing a "date" which had been procured for her, she gave Champion $10.00, "the whole price of the trick," and he gave her back $6.00. It appears from the record that the professional career of Connors in Kansas City ended in June, 1959, when, in response to a call for a "date" at Room 700 in the Aladdin Hotel and after advising the man she found in that room of her asking price, she found herself under arrest by Officer Tracy of the Police Reserve of Kansas City, Missouri, who had taken the room in connection with his investigation of the prostitution activities in the hotel. It also appears from the record that, in addition to arresting Connors, Officer Tracy arrested the bellboy who had called her. Slater's career as a prostitute evidently ended when she was picked up by the vice squad and put in jail.

The defense of Garner, who testified in his own behalf, was, in substance, that he had no intention of going from Omaha to Kansas City on the night of May 12, but at the last moment was induced to go by Connors, who bought the tickets for both; that he thought that Weddle and Slater were going to Kansas City to get married, and that he and Connors

were to see them off. His evidence and that given by Connors tended to support his claim that she persuaded and induced him to go to Kansas City and that he had no intention of having her engage in prostitution at that place.

■ Under the evidence, the question of the guilt or innocence of the defendants was clearly for the jury. It was a fair inference from the evidence that the defendants had intended to do what the evidence showed they did do. See and compare, Dunn v. United States, 10 Cir., 190 F.2d 496, 498.

■ There was nothing ambiguous about the verdicts of the jury finding Weddle guilty under Count II, and Garner guilty under Count III. The contention that, because the jury saw fit to acquit the defendants of conspiracy to transport the women as charged in Count I, the defendants should be granted a new trial upon the other counts, is without merit. A substantive offense and a conspiracy to commit it are separate offenses. Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L. Ed. 1489. Furthermore, inconsistency in a verdict on the separate counts of an indictment or information does not entitle a defendant to the reversal of a conviction. Dunn v. United States, 284 U. S. 390, 393–394, 52 S.Ct. 189, 76 L.Ed. 356; United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48; Schaefer v. United States, 8 Cir., 265 F. 2d 750, 754–755 and cases cited.

■ The testimony of Officer Tracy as to his conversation with the bellboy, at the Aladdin Hotel, who arranged to have Connors go to Tracy's room, where she was arrested, was, no doubt, hearsay and the objection to it should have been sustained, but the burden is on the defendants to show that its admission constituted both error and prejudice. Goldstein v. United States, 8 Cir., 63 F.2d 609, 614. It must be remembered that error which in a close case might call for a reversal may be disregarded as harmless where the evidence of guilt is strong. Glasser v. United States, supra,

page 67 of 315 U.S., at page 463 of 62 S.Ct. As was said by Judge Hook in Williams v. United States, 8 Cir., 265 F. 625:

"Whether prejudice results from the erroneous admission of evidence at a trial is a question that should not be considered abstractly or by way of detachment. The question is one of practical effect, when the trial as a whole and all the circumstances of the proofs are regarded. In the case before us the evidence of guilt, aside from that challenged, was overwhelming and undisputed. * * * "

See also and compare, Davis v. United States, 8 Cir., 229 F.2d 181, 187, and Blackwell v. United States, 8 Cir., 244 F.2d 423, 431. With respect to an erroneous cross-examination of a defendant, this Court in Apt v. United States, 13 F.2d 126, 127–128, said:

" * * * But this cross-examination, though improper, could not have been prejudicial. The connection of the defendant Apt with the conspiracy charged in the indictment was so clearly shown, and the verdict of the jury such a righteous one, that it would be a miscarriage of justice to reverse it on account of this indefensible cross-examination."

It is not conceivable that what Tracy said to the bellboy, or what the bellboy said to Tracy, about a woman, had any effect whatever upon the outcome of the trial. The unsubstantial imperfections or irregularities which occur in the trial of nearly every criminal case are not, on review, to be raised to the dignity of reversible error. "We must guard against the magnification on appeal of instances which were of little importance in their setting." Glasser v. United States, supra, at page 83 of 315 U.S., at page 471 of 62 S.Ct.

In the appellants' brief and argument it is said that the court erred in its instructions by minimizing the testimony of the defense witnesses, and by virtually instructing the jury to believe the testimony of one of the Government's wit-

nesses, namely, the bellboy who sent Connors to the room of Officer Tracy. Our examination of the instructions convinces us that nothing that the District Court said or omitted to say constituted reversible error. The court made it clear to the jury that it was their duty and responsibility to determine from the evidence the question of the guilt or innocence of the defendants. It is true that the court commented upon the evidence and the credibility of some of the witnesses. Whether that was necessary or desirable may be questionable, but, if so, the question was for the trial court to decide. Buchanan v. United States, 8 Cir., 15 F.2d 496, 498. The applicable rule was stated by Mr. Justice Roberts in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, as follows:

" * * * A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury. Patton v. United States, 281 U.S. 276, 288 [50 S.Ct. 253, 74 L.Ed. 854]; Quercia v. United States, 289 U.S. 466 [53 S.Ct. 698, 77 L.Ed. 1321]. Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases. * * * ."

See also, Batsell v. United States, 8 Cir., 217 F.2d 257, 262; Kansas City Star Company v. United States, 8 Cir., 240 F.2d 643, 664–665.

■ It must be conceded that the rule relative to comments by a trial judge in his instructions to a jury is more easily stated than applied, and how it is applied by a reviewing court seems to depend somewhat upon whether that court regards a jury as composed of sensible, intelligent, responsible human beings or of rather spineless individuals of weak mentality, easily led astray, and not overly familiar with the facts of life.

In the case of Buchanan v. United States, supra, at page 498 of 15 F.2d, this Court said:

" * * * Under the rule, as stated and applied by the Supreme Court, it seems that, when a judge expresses his opinion as to the facts to the jury, making it clear that it is nothing but his opinion, and not binding upon them in any way, and that it is their duty and responsibility to determine all of the facts, he is within his rights, and that he is only subject to reversal when his comments upon the evidence or opinion as to the facts amounts to partisan argument or advocacy, or constitutes an appeal to passion or prejudice. It is unquestionably true that, because of the judge's influence with the jury, the right which he has to express his opinion as to the facts should be sparingly, carefully, and wisely used. At the same time, because of his participation in the actual trial of the cause, he is better able to tell when the use of that right is justified than is an appellate court from reading the cold record. After all, jurors are men with minds of their own, and, where they are given to understand that the responsibility for determining the facts is upon them, they do not generally act against what they believe to be right and just. There is a good illustration of that in this case. The judge expressed his opinion as to both defendants. The jury acquitted one and convicted the other."

We find no comments in the instructions of the court in the instant case which would vitiate the verdict of the jury.

■ The defendants requested that the trial court instruct the jury to carefully scrutinize the testimony of the "self-confessed prostitutes" and to receive it with care and caution. The court gave the usual instructions with respect to the credibility of witnesses and the weight of evidence, telling the jury that they were the sole judges of those matters. The jury were fully in--

formed by the evidence that the women had been prostitutes; there was no need for the trial judge to tell the jury what they already knew, or to warn them that the testimony of prostitutes should be received with caution—a matter of common enough knowledge among laymen. It was not reversible error to deny the instruction requested by the defendants. See and compare, Hilliard v. United States, 4 Cir., 121 F.2d 992, 1000; Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442.

The defendants assert that the court's instructions as to the law applicable to the conspiracy count of the indictment were erroneous. Whether those instructions were right or wrong is, by virtue of the jury's verdict of not guilty on that count, a matter of no consequence.

The judgments appealed from are affirmed.