**Charles Edward Anderson BERRY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16446.**

United States Court of Appeals Eighth Circuit.

Oct. 28, 1960.

Merle L. Silverstein, St. Louis, Mo., Rosenblum & Goldenhersh, with Merle L. Silverstein, St. Louis, Mo., on the brief, for appellant.

Frederick H. Mayer, Asst. U. S. Atty., Malcolm R. Wilkey, Asst. Atty. Gen., and William H. Webster, U. S. Atty., St. Louis, Mo., Frederick H. Mayer, St. Louis, Mo., on the brief, for appellee.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

PER CURIAM.

Charles Edward Anderson Berry, thirty-three years of age and a married man,

is a musician, entertainer, actor, song writer, and stockholder in Chuck Berry Music Corporation, which owns a night club in St. Louis, Missouri, known as "Chuck Berry's Club Bandstand". Berry is a Negro. He was, on December 23, 1959, charged by indictment with having knowingly transported in interstate commerce from El Paso, Texas, to St. Louis, Missouri, a girl known as Janice Norine Escalanti, with the intent to induce her to engage in immoral practices; a violation of 18 U.S.C. § 2421. To the indictment, Berry entered a plea of not guilty. He was tried to a jury, found guilty, and on March 11, 1960, sentenced to five years' imprisonment and to pay a fine of $5,000. He has appealed.

On Berry's behalf it is contended that his motion for a directed verdict of acquittal, made at the close of the evidence, should have been granted on the ground of the insufficiency of the evidence to show the intent necessary to make his transportation of the girl a criminal offense. It is also contended that he did not have a fair trial because of "the hostile and prejudicial conduct and remarks of the trial court," and that the trial judge erred in certain rulings on evidence and in his instructions to the jury.

We think it would serve no useful purpose to discuss this case in detail. If there is to be a retrial, the rulings on evidence of which complaint is made are unlikely to recur, and we doubt that any of them affected the defendant's substantial rights. See Heglin v. United States, 8 Cir., 27 F.2d 310, 313. The charge of the trial court as a whole was, in our opinion, adequate, fair and accurate. Berry was not entitled to a directed verdict of acquittal. There was ample circumstantial evidence of his intent, when he picked up the girl in El Paso, to make the issue of his guilt one for the jury. See and compare: Shama v. United States, 8 Cir., 94 F.2d 1, 4 and cases cited; Dunn v. United States, 10 Cir., 190 F.2d 496, 498; United States v.

Mathison, 7 Cir., 239 F.2d 358, 360–361; Garner v. United States, 8 Cir., 277 F.2d 242, 245. What a man does is often more indicative of his intent than what he says. Intent, like any other fact, may be circumstantially proved. "Triers of fact are constantly called upon to determine the intent with which a person acted." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. The evidence of the Government with respect to the relations existing between Berry and the girl on the trip from El Paso, Texas, to St. Louis, Missouri, and after their arrival in St. Louis, amply justified an inference that his initial intent in transporting her was to have her engage in immoral relations with him.

What has given us concern is whether the attitude, conduct and remarks of the trial judge which are complained of, must be held to have made the trial unfair. This Court has not been unduly critical of sharp remarks made by a trial judge to counsel for a defendant with respect to rulings on evidence. In Goldstein v. United States, 8 Cir., 63 F.2d 609, 613, it was contended that misconduct of the trial judge required a reversal of a conviction. This Court, after quoting what was said in Sunderland v. United States, 8 Cir., 19 F.2d 202, 216, about a fair trial meaning "a trial before an impartial judge, an impartial jury, and in an atmosphere of judicial calm," went on to say (at page 613 of 63 F.2d):

"It is not always possible during the trial of a hotly contested case for a judge, however impartial he may be, to maintain in the courtroom that atmosphere of complete judicial calm which is so much to be desired. We must not overlook the fact that the human element cannot be entirely eliminated from the trial of lawsuits. While counsel owe to the court, because of the position which he occupies, the utmost deference and respect, and while the court owes to them an equal obligation of courtesy and patience and consider-

ation, nevertheless sharp differences of opinion do arise in the heat of trial and things are said which were better left unsaid. * * * An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits."

 No matter how objectionable a character Berry may have been or how strong the evidence against him, he was unquestionably entitled to a full and fair trial. It seems safe to say that ordinarily a trial judge who, in the presence of the jury, makes remarks reflecting upon a defendant's race or from which an implication can be drawn that racial considerations may have some bearing upon the issue of guilt or innocence, has rendered the trial unfair. Compare, Skuy v. United States, 8 Cir., 261 F. 316, 319–320, in which a new trial was ordered because counsel for the government made derogatory remarks about witnesses of the Jewish race.

We find it unnecessary in the instant case to set out in this opinion the remarks complained of. Many of them, viewed in isolation, would probably not rise to the dignity of reversible error. Each of us has carefully reviewed and considered the record as a whole, and each of us has reluctantly come to the conclusion that the trial accorded Berry was unfair because of the attitude of the trial judge toward him, as evidenced by remarks made during the course of the trial.

In fairness to the trial judge, it should be said that much occurred to try his patience. The record shows that he had difficulty in hearing witnesses; that he apparently was in physical discomfort much of the time; that the trial dragged; that he was unable to see eye-to-eye with counsel in their conduct of the trial; that there was convincing evidence that Berry's treatment of the girl named in the indictment—who was a fourteen-year-old Apache Indian who had become a prostitute—was inexcusable; and that his testimony about his intention in transporting her in his automobile from El Paso to St. Louis being to make an honest woman of her, had its irritating aspects.

Nevertheless, as we have said, Berry was entitled to a fair trial, and we are convinced that the "conduct [of the trial court] complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits" within the meaning of Goldstein v. United States, supra, at page 613 of 63 F.2d.

The judgment appealed from is vacated, and the case is remanded to the District Court for a new trial before a judge to be designated by the Chief Judge of that court.