LA BARGE WATER WELL SUPPLY COMPANY, a Corporation, Appellant,

v.

UNITED STATES of America, Appellee.

LA BARGE PIPE LINE SUPPLY COMPANY, a Corporation, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 17375, 17376.

United States Court of Appeals Eighth Circuit.

Dec. 17, 1963.

Hugh E. Gibbons, St. Louis, Mo., Hocker, Goodwin & MacGreevy, St. Louis, Mo., for appellant.

Ralph Muoio, U. S. Dept. of Justice, Tax Division, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Meyer Rothwacks, Michael I. Smith, Stephen B. Wolfberg, Dept. of Justice, Washington, D. C., and also Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

**BLACKMUN, Circuit Judge.**

The two corporate taxpayers instituted these separate actions to recover payments of income tax deficiencies caused by surtax exemption disallowances under § 1551 [1] of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1551. The cases were consolidated for trial. The jury returned special verdicts in favor of the United States and judgments were entered accordingly. The taxpayers appeal.

La Barge Pipe and Steel Company, not one of the taxpayers here, began business in St. Louis in 1953 as Pierre L. La Barge, Jr.'s sole proprietorship. It was engaged in the warehousing and distribution of tubular products and piping materials. It made sales to, among others, the water well drilling industry and the gas and oil pipe line industry. The business was incorporated in March 1956 with La Barge the owner of over 99% of Pipe and Steel's outstanding shares.

In September 1956 the taxpayer La Barge Water Well Supply Company was incorporated in Missouri. It was to hold itself out as a specialist and take over and increase sales to the water well drilling industry. In May 1957 the taxpayer La Barge Pipe Line Supply Company was incorporated in Missouri to hold itself out as a specialist and handle sales to the gas and oil pipe line industry. Pipe and Steel transferred property to each taxpayer in return for stock. La Barge was president of Pipe and Steel and of both taxpayers.

The three corporations filed separate income tax returns. Each claimed the $25,000 surtax exemption provided for by § 11(c) of the 1954 Code. The In-

ternal Revenue Service disallowed this exemption to Water Well for its fiscal years ended March 31, 1958, 1959, and 1960, and to Pipe Line Supply for its fiscal years ended March 31, 1958 and 1960.[2] This was on the ground that the exemption was not available because of the prohibition of § 1551.

The only part of § 1551 which is significant here is its provision that the exemption shall be disallowed "unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption * * was not a major purpose of such transfer". No issue is raised as to the satisfaction of all other conditions of the statute including the required control by Pipe and Steel. Further, the taxpayers concede that there is no question here as to the sufficiency of the evidence to support the verdicts.

The issues before us are: (a) Were the taxpayers deprived of a fair trial by the district judge's comments in the presence of the jury relative to the effect of the dissolution of Pipe Line Supply? (b) Were the taxpayers deprived of a fair trial by other statements made by the court in the presence of the jury? (c) Were the instructions and the special verdict forms erroneously prejudicial? We discuss these in order.

1. The court's comments as to Pipe Line Supply's dissolution. The complaint in Pipe Line Supply's action was filed April 9, 1962. Articles of dissolution of the corporation were filed, under V.A. M.S. § 351.470, with the Missouri Secretary of State one week later on April

---

**1.** 26 U.S.C.A. § 1551.

"If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property * * * and if after such transfer the transferor corporation or its stockholders, or both are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year * * * be

allowed * * * the $25,000 exemption from surtax provided in section 11(c) * * * unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption * * * was not a major purpose of such transfer. For purposes of this section, control means * * *."

**2.** Pipe Line Supply, because of losses, enjoyed no surtax exemption benefit for fiscal 1959.

16. La Barge testified that the corporation was dissolved because "We just didn't seem to be making enough progress in the industry to warrant continuance of the operation". V.A.M.S. § 351.-565 provides:

"The dissolution of a corporation * * * by the issuance of a certificate of dissolution by the secretary of state * * * shall not take away or impair any remedy available to or against such corporation * * * for any right or claim existing, or any liability incurred, prior to such dissolution if suit or other proceeding thereon is commenced within two years after the date of such dissolution. Any such suit or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

The cross-examination of Mr. La Barge led to testimony and remarks of counsel and the trial judge which indicated initial misunderstanding as to the facts and significance of the dissolution and its date.[3] There was no motion for a mistrial.

3. "Q. You stated that all three corporations shared the same facilities, is that correct, 7400 South Broadway? A. Yes, sir.

"Q. Do all three corporations have that address? A. Yes, sir.

"Q. Did the Pipe Line Supply—

"Mr. Gibbons: I object to that, your Honor, because the one corporation is no longer in existence. They did at one time.

"The Court: Well, let me say this to you: You are merely the attorney. This is the witness. Now, he's the one doing the swearing and if he can't keep up with what he's swearing to, that's his problem and not yours.

"Mr. Gibbons: All right, your Honor.

"The Court: If it's no longer in existence and he was president of it he ought to know it.

* * * *

"Q. Would you tell me approximately when the Pipe Line Supply Corporation was liquidated? A. When, you say?

"Q. When. A. April 1, 1962, I believe.

"Q. April 1, 1962, did you say? A. Yes, sir.

"The Court: Let me get you gentlemen straight, and that pertains to you, or let me get you to give the court some information. What do you mean by liquidation? What do you mean by liquidated?

"The Witness: We dissolved the company.

"The Court: You dissolved the company? Isn't it a part of this lawsuit?

"Mr. Gibbons: Yes, your Honor.

"The Court: How are you going to have a dissolved company a party to a lawsuit?

"Mr. Gibbons: The—

"The Court: I think we get rid of one right now, don't we?

"Mr. Gibbons: At this time I would like to amend the caption of the petition of the one—

"The Court: It isn't a question of amending the caption. It's a question, I would assume, of substitution, which is completely new parties.

"Mr. Gibbons: All right, your Honor.

"The Court: I don't know if you can do that or not. I was just trying to find out how you could bring a lawsuit in the name of a company that has been dissolved.

"Mr. Gibbons: No, sir, the lawsuit was brought before it was dissolved.

"The Court: I don't care when it's dissolved. When you dissolve a corporation you get rid of it, don't you? I merely raise that now.

"Mr. Gibbons: Do you have any objection to the substitution of the board of directors?

"Mr. Bray: I object to the substitution because up until the actual conduct of the trial I was not aware that the Pipe Line Supply Corporation had actually been dissolved.

"The Court: When was it dissolved?

"Mr. Gibbons: April 1, 1962, your Honor.

"Mr. Bray: It was prior to the filing of the lawsuit.

"Mr. Gibbons: No, it was after.

"The Court: And that was the which company?

"Mr. Bray: Pipe Line Supply.

"Mr. Gibbons: Pipe Line Supply, sir.

"The Court: Well, then, the statement that you made a minute ago isn't true because your lawsuit was filed at that time. You said the lawsuit was filed before you dissolved it. That lawsuit was filed in June.

"Mr. Gibbons: I stand corrected, then, your Honor. I didn't prepare the petition on it.

"The Court: Now, I'll talk to you people just before two if you will come into

The taxpayers argue that the court emphasized in the presence of the jury an incorrect situation relating to Pipe Line Supply's dissolution, that it cast aspersions when it demanded to know how a dissolved company could be a party to a lawsuit, that the complaint was in fact filed before dissolution was effected and not afterward, that, under § 351.565, the suit could properly be maintained in Pipe Line Supply's name anyway, and that the court's comments were not only incorrect as a matter of Missouri law but constituted reversible error.

We do not agree. This court has often observed, see Goldstein v. United States, 63 F.2d 609, 613 (8 Cir. 1933), that it is difficult for an appellate court on a cold record to reproduce accurately for itself the warm vigor and atmosphere of the jury trial. But we cannot equate the court's remark as to counsel's statements not being true with an accusation of outright falsehood. The court, the witness and counsel were all, for the moment, in error as to the dates and the result of the dissolution but this was clarified after the noon recess. The court then advised the jury of its own error, the jury's nonconcern with the dissolution, and its desire not to be understood

as having accused the taxpayer's counsel of lying. Of course, errors and statements of this type by a judge can, in a proper case, constitute error which is not subject to correction by apology or directions to the jury if the atmosphere of a fair trial is to be retained. The situation before us, however, is not of that category. Everyone, including the court, suddenly found himself in factual confusion over a matter which the court mistakenly thought was jurisdictional and for its immediate concern. The trial court readily recognized its error and premature conclusion. In our opinion it sufficiently clarified the matter with the jury in a way which left no prejudice in their minds and which was not inconsistent with substantial justice. The error was harmless within the scope of Rule 61, F.R.Civ.P.

2. Other statements by the court before the jury. The taxpayers also complain that the district court, in its questioning of witnesses, in its running comments upon testimony, and in its characterization of it, overstepped the bounds of judicial propriety and deprived the taxpayers of the fair trial which was due them.

the office about it. You're going to have to come up—I don't know what you've got on it, I don't know whether even they can bring it or not. * * * No need of us starting in with something here that when we get through we've accomplished nothing * * *

* * * * *

"The Court: Ladies and gentlemen of the jury, it has been called to my attention that the date that was looked at on this La Barge Pipe Line outfit of June 6th is an incorrect date. The date is April 9, 1962. The matter with respect to the dissolution or non-dissolution of that isn't a matter that is of any concern to the jury in the least anyway; it isn't a matter that you will be instructed on. It has to do merely with the mechanics of the matter, which is a matter before the court. It will be taken up at some later time if under the law it need be taken up. That testimony, insofar as you are concerned, is of no interest to you. The attorney for the defendant seems to think I accused him of lying in

this matter. I don't think I did. If I did, I didn't mean that. I meant to say that he was mistaken, I thought, but none of that has anything to do with the problem with which you people are confronted. It isn't a matter that you will be instructed on; it isn't a matter that has anything whatever to do with the merits of the lawsuit. It is a matter that deals entirely with the law, it's a matter before the court, and so you can give no concern whatever to what may have been said in that respect insofar as the problems with which you are dealing are concerned.

"Either one of you want to add anything else?

"Mr. Bray: Excuse me, your Honor, just one thing. You said, 'the attorney for the defendant.'

"The Court: I mean the attorney for the plaintiff, for the Pipe Line, and it only pertains to the La Barge Pipe Line Supply Company case, not the other case."

Much of this material is set forth in footnote 3. We have carefully examined the entire record and, specifically, the other portions to which our attention has been called by the taxpayers. They need not be quoted here.

This trial judge is experienced and able. He obviously readily grasped the issues and was anxious to get on with the litigation. Each judge has his own manner and his own idea of proper judicial activity or inactivity in a lawsuit. One is relaxed and content to let counsel present evidence in his own way and unmolested. Another is less patient and prefers a tight rein. As an appellate court we certainly cannot dictate a trial judge's every move. Our responsibility is only to see that the court has not stepped into the area of unfairness and prejudice. We have said:

> "An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." Goldstein v. United States, supra, p. 613 of 63 F. 2d.

> "While we find that the comments of the trial judge and his participation in the questioning of the defendant and his witnesses exceeded the bounds of judicial propriety, we must nevertheless also conclude that such activities prejudiced the defendant before a new trial may be ordered on such grounds." Woodring v. United States, 311 F.2d 417, 420 (8 Cir. 1963), cert. denied 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414.

Goldstein and Woodring were criminal cases; their standard has equal pertinency for civil causes.

We understand the concern of counsel, but apart from the subsidiary question whether appropriate objections were noted, we are convinced, and we so hold, that the trial court's questions and comments did not constitute reversible error. In reviewing the record we observe, incidentally, that it contains instances of corresponding restraints and comments to government counsel. We find this record less extreme and objectionable than the situations described in Hickey v. United States, 208 F.2d 269, 274–75 (3 Cir. 1953), cert. denied 347 U.S. 919, 74 S.Ct. 519, 98 L.Ed. 1074; American Motorists Ins. Co. v. Napoli, 166 F.2d 24, 27 (5 Cir. 1948); and Knapp v. Kinsey, 232 F.2d 458, 465–67 (6 Cir. 1956), cert. denied 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed. 2d 86, pressed upon us by the taxpayers, and those in our own cases of Agee v. Lofton, 287 F.2d 709 (8 Cir. 1961); Myers v. George, 271 F.2d 168, 83 A.L. R.2d 1121 (8 Cir. 1959); and Berry v. United States, 283 F.2d 465, 466–67 (8 Cir. 1960), cert denied 364 U.S. 934, 81 S.Ct. 380, 5 L.Ed.2d 366, where new trials were granted. Compare Throckmorton v. St. Louis-San Francisco Ry., 179 F.2d 165, 169–70 (8 Cir. 1950), cert. denied 339 U.S. 944, 70 S.Ct. 797, 94 L.Ed. 1359; Illinois Terminal R. R. v. Creek, 207 F.2d 475, 480 (8 Cir. 1953).

3. The instructions and special verdict forms. Section 1551 concerns itself, among others, with two factors: (1) whether the taxpayer corporation was "created for the purpose of acquiring" the property transferred to it, and (2) whether securing the surtax exemption was "a major purpose of such transfer".

The first of these was clearly satisfied as to both taxpayers. It is claimed, however, that the trial court misinterpreted and misapplied the statute in its instructions to the jury and in the special verdict forms in that it related loss of the surtax exemption not to "a major purpose of such *transfer*" but to "a major purpose of [the taxpayers'] *formation*" (emphasis supplied), and in that the court imposed for the jury a standard of "true separateness" as between the taxpayers and their parent.

There is something to be said in support of this argument. The trial court

did instruct that under § 1551, "if a corporation is formed and a major purpose of its formation was obtaining this exemption then the Commissioner has the right to disallow the exemption" It observed that the Commissioner had determined that a major purpose for which the taxpayers "were formed was to obtain the advantages under the law of the $25,000 surtax exemption" It posed the questions whether, each was incorporated to secure additional customers and whether the tax saving occasioned by incorporation "was not a major purpose of such incorporation", even though tax benefit "for such incorporation" resulted. It instructed that it was not necessary that the exemption be "the sole or principal purpose of the formation" and that it was sufficient if it was "a major purpose that prompted its formation". It mentioned, as to each taxpayer, seven items which the jury might consider in deciding whether the surtax exemption was "a major purpose for the formation". It stated that the burden of proof was on the taxpayers with respect to the exemption not being "a major purpose for the formation". The special verdict submitted in each case was the question, "Was obtaining the surtax exemption a major purpose of the formation of the" taxpayer? It is thus apparent that on their face these portions of the instructions and the verdict forms are directed toward purpose of the corporations' formation rather than toward purpose of subsequent transfers of property to them.

■ Nevertheless, this point also must be ruled against the taxpayers. In the first place, although the taxpayers made other objections to the instructions, we find nothing in the record in the nature of objections directed specifically to this claim of misplaced emphasis as to purpose and thus nothing which meets the requirements of Rule 51, F.R.Civ.P. We note, secondly, that the taxpayers themselves, in the objections they did make, twice referred to purpose at the time of formation. As a consequence, they are not now in a comfortable position to complain. Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 445 (8 Cir. 1961), cert. denied 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192. Thirdly, the court in its instructions did not restrict its comments to formation purpose. It observed as to each taxpayer that "the securing of the surtax exemption may constitute a major purpose of the transfer, notwithstanding that such formation was effected for a valid business purpose". Finally, there could have been no jury confusion here for there is no contention that the purpose of the transfer of assets to each taxpayer was different from the purpose of its formation. These were newly created corporations and the transfers took place promptly upon organization. If the formation purpose and the transfer purpose were different, taxpayers' point might have significance.

■ The import of § 1551 is clear. We think the statute is to be broadly approached. This is recognized by the Regulations, § 1.1551–1(e), which provide that "all circumstances relevant to the transfer shall be considered". We see nothing to indicate that the Regulations are not valid in this respect. It of course would have been preferable for the instructions and the verdict forms to have been directed to transfer purpose rather than formation purpose. Indeed, this court once said, "Even in criminal cases it is held as a general rule that where the law governing a case is expressed in a statute the court in its charge should use the language of the statute". Terminal R. R. Ass'n v. Howell, 165 F.2d 135, 140 (8 Cir. 1948). But, after all, the standard is whether the instructions as a whole substantially apprised the jury of the meaning of the statute and whether they fairly and fully presented the issues to the jury. McDonnell v. Timmerman, 269 F.2d 54, 62 (8 Cir. 1959); Mounds Park Hospital v. Von Eye, 245 F.2d 756, 764, 70 A.L.R.2d 335 (8 Cir. 1957); Hansen v. Barrett, 186 F.Supp. 527, 532 (D.Minn.1960). We think this standard has been met here and without prejudice to the taxpayers.

Affirmed.