**Meredith Paul LOWE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18738.**

United States Court of Appeals
Eighth Circuit.

Feb. 19, 1968.

Stewart R. Perry, Minneapolis, Minn., for appellant.

Roland J. Faricy, Asst. U. S. Atty., and Sidney P. Abramson, Sp. Asst. U. S.

Atty., Minneapolis, Minn., for appellee, Patrick J. Foley, U. S. Atty., Minneapolis, Minn., was on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal by [Maryk] Meredith Paul Lowe from his conviction on two counts, each charging a violation of Chapter 63, Title 18 U.S.C.: Count I, wire fraud in violation of 18 U.S.C. § 1343 (1964 ed.); and Count II, mail fraud in violation of 18 U.S.C. § 1341 (1964 ed.). The defendant was given a four year general sentence.

The defendant argues here that the trial court erred by (1) denying his motions for judgment of acquittal[1] as to Counts I and II; (2) admitting testimony as to conversations between him and his wife during their marriage; (3) admitting testimony of similar conduct on other occasions; and (4) refusing to allow him to examine the Grand Jury testimony of the prosecution's chief witness.

■ We are persuaded, after a careful review of the record, that there is clear and convincing evidence to support the defendant's conviction under Count I. As the sentence was a general one and less than that which could have been imposed on either count, we need not consider whether the evidence was also sufficient to sustain the conviction under Count II. Atkinson v. United States, 344 F.2d 97 (8th Cir.), cert. denied, 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1965); Myres v. United States, 174 F.2d 329 (8th Cir.), cert. denied, 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520 (1949). In our view, there is nothing in the record to indicate the guilty verdict on Count I was induced by evidence introduced as to Count II. See, United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927).

We first consider the defendant's contention that the evidence was insufficient, and thus the motion for acquittal should have been granted.

The prosecution's key witness was the victim, Mrs. Angy Wetrosky. She was a 59-year-old widow and a resident of Minneapolis, Minnesota. Every Sunday evening, she and her twin sister, Wanda Cowan, attended dances held at a public ballroom in St. Paul, Minnesota. While attending one of these dances, she met the defendant, [Maryk] Meredith Lowe, age forty-seven. The ladies testified that this meeting took place in July of 1965, while the defendant testified that it occurred in September of 1965.

The three went to a Minneapolis cafe after the dance. There, according to Mrs. Wetrosky and her sister, the defendant related that he was an investigator for the federal government; that he owned an apartment building and a home in California; and that he was a widower. Mrs. Wetrosky, in turn, told him that she was a widow, but made no reference to her assets. The defendant testified that his conversations at the cafe may have led the ladies to believe that he owned an apartment building in California, and that he did nothing to correct this impression. He also admitted to having told them that he was a widower and a private investigator.[2] He denied telling them that he worked for the federal government or that he owned a home in California. The facts are that he was not the owner of an apartment building, that he was married and although a private investigator, an unemployed one. He had been the manager of the apartment building, and he had attempted, without success, to sell it for the owner.

The defendant and Mrs. Wetrosky continued to see each other frequently. During this period, she informed him that she had a problem concerning an

---

1. The motion made at trial was a motion to dismiss on the grounds of insufficient evidence. Technically, it should have been a motion for judgment of acquittal. FED.R.CRIM.P., Rule 29(a).

2. The defendant's business card, introduced at trial, carried the slogan, "Let's all cooperate in wiping out crime."

$1,800 loan she had made to her daughter to enable the daughter to purchase a home in Iowa. They took a trip to Iowa to investigate the matter. An intimate relationship developed on this trip, if not earlier.

On returning from Iowa, the defendant requested a loan from Mrs. Wetrosky. He falsely told her he wanted to fly to California to see his injured brother, but was unable to do so as his wallet had just been stolen. He promised to repay her from money he had in a safety deposit box in California.[3] She loaned him $300.00 [4] on September 28, 1965. He borrowed an additional $500.00 on October 4, 1965, from her to repair his automobile. Of that latter amount, about $370.00 was in fact used to repair his automobile. He used the $300.00 loan and the balance of the $500.00 loan to travel to Duluth, Minnesota, and Sioux Falls, South Dakota, in search of a job. He did not find one and returned to Minneapolis near the end of October. When he returned, he told Mrs. Wetrosky that a tenant in the California apartment building had been damaged by a landslide, and that he was faced with a suit by the tenant. He requested a loan of $2,500 to meet the tenant's demand. On October 29, 1965, they went to the bank and she withdrew $3,000—$500.00 in cash and a certified check for $2,500 made out "cash." She kept the $500.00 cash and gave him the check. He gave her a note covering the loan. According to Mrs. Wetrosky, he agreed to repay the loan out of a $5,000 check he would receive in January when he terminated his employment with the government.

The defendant admits that he agreed to repay the loan, but testified that when this loan was made, he told Mrs. Wetrosky that he did not, in fact, own the apartment building but that he did have an agreement with the owner of the building under which he would be paid a $5,000 commission when it was sold.[5] On further examination, he admitted that he had no right to expect to receive a $5,000 commission if the apartment building was sold as he had given up any right that he may have had when he left California.

The defendant and Mrs. Wetrosky began a trip to California about the 1st of November. They arrived in Las Vegas on November 3rd or 4th, and registered in a motel. It was there that the defendant committed the acts serving as the basis for Count I.

Mrs. Wetrosky's version of the facts was that they had decided to get married, that the defendant told her that he was broke and she should get more money to cover the expenses of the trip and the wedding, and that he placed the call to her bank in Minneapolis. Thereafter, he gave the phone to Mrs. Wetrosky and told her to tell the bank to send her $1,500. He promised to repay her this sum, as well as that previously owed, out of the $5,000 check he expected to receive in January.

A Western Union money order, totaling $1,435 net, was sent to Mrs. Wetrosky at the motel. She cashed it and gave the money to the defendant.

The defendant denied asking Mrs. Wetrosky for the loan, denied placing the call, and denied telling her to ask the bank to send $1,500. He testified that he merely told her he was broke, and that she thereafter voluntarily took the necessary steps to obtain the money. On cross-examination, he admitted that he was to repay her out of the $5,000 commission (an admitted lie) and that he was not broke as he still had a portion of the $2,500 which Mrs. Wetrosky had loaned him in Minneapolis.

On November 5th, the defendant and Mrs. Wetrosky left Las Vegas for Mexi-

---

3. There was no further mention of that money.

4. This loan was frequently referred to as being $3,000. A close reading of the record seems to establish that it was only $300.00.

5. The defendant denied telling Mrs. Wetrosky that he would receive a $5,000 termination check from the government.

co, and on the 6th, were in El Paso, Texas. On the 8th, unbeknown to Mrs. Wetrosky, the defendant obtained a Mexican divorce from his former wife. They were married in Zaragoza, Chihuahua, Mexico, on the morning of November 9, 1965.

On their return to Las Vegas, Mrs. Wetrosky wrote to her bank requesting that her savings account be closed and that the amount remaining in it be mailed to her. This transaction constituted the basis for Count II. Mrs. Wetrosky's testimony as to the circumstances under which she sent for this money raises questions as to whether the conviction on this Count could be sustained. For the reasons previously stated, however, we need not examine this testimony in detail, nor determine whether the conviction on that count could be sustained.

On November 15, 1965, the defendant and Mrs. Wetrosky left Las Vegas for Minneapolis. Upon arriving, they vacated her room, closed out her checking account and applied to have her life insurance cashed in.

They then left for Phoenix, Arizona, where they remained from November 22, 1965, to November 29, 1965. Pursuant to an instruction phoned to her insurer, the insurer mailed a check to Phoenix for the cash surrender value of the life insurance policy. Of that $10,433.16, $2,500 was deposited in the name of Mrs. Angy Lowe and the balance was deposited in the defendant's name. The defendant apparently told Mrs. Wetrosky that he would hold it until they decided to purchase a home and business; and, at that time, he would pool her money with his.

From Phoenix, they went to Los Angeles, and returned to Las Vegas on December 2, 1965. He obtained a room for her and left. He called several times reassuring her that he would be back by January, but failed to return. (The defendant had, in fact, secured a Mexican divorce from Mrs. Wetrosky on December 18, 1965.) She waited in Las Vegas until January 6, 1966, when she returned to Minneapolis.

The defendant never repaid any of the money given to him by Mrs. Wetrosky, nor did she receive any of the insurance proceeds deposited in his name.

■ In reviewing this evidence, we keep in mind that it is the responsibility of the jury to determine the credibility of the witnesses and that we must take that view of the evidence most favorable to the government and give it the benefit of all inferences which can reasonably be drawn in its favor. Raftis v. United States, 364 F.2d 948 (8th Cir. 1966).

■ While the conviction could certainly be sustained on the basis of Mrs. Wetrosky's testimony, particularly if the inferences from the testimony are resolved in her favor, in our view, it can also be sustained on the basis of the defendant's testimony. He admitted that on their first evening together, he told Mrs. Wetrosky that he owned an apartment building in California, that he was employed as a private investigator, and that he was a widower, each a factor that would affect her willingness to advance him money and his ability to reimburse her. E. g., Homelite v. Trywilk Realty Company, 272 F.2d 688 (4th Cir. 1959) (" * * * A false representation is material if the fact untruly asserted, or wrongfully suppressed if it had been known to the party, influenced his judgment or decision. * * *" P. 691). While he testified that he told her that he had lied as to his ownership of the apartment building before the bank wired her the money on which Count I is based, he admitted that he had told her that he was to receive a $5,000 commission from the sale of the apartment building, thus substituting one lie for another. Furthermore, he never informed Mrs. Wetrosky that he was unemployed and married.

While he denied specifically asking Mrs. Wetrosky to call the bank and placing the call, he admits to telling her that he was in need of money, to agreeing to repay her out of a $5,000 expectancy, to being present when she call-

ed the bank, and to lying when he told her that he was broke.

The defendant argues that his fraudulent statements on the night of their meeting were made before he had any idea of her wealth and thus he had no intent to defraud. We simply note he was aware of Mrs. Wetrosky's financial condition when her bank was called and asked to send money. At the very least, his own testimony indicates that he intentionally lied to her at that time concerning the fact that he was broke and the fact that he had a commission coming.

▮ The defendant objects to testimony of similar conduct by another of his victims on the ground that it is too remote. Even accepting the defendant's contention that prior fraud occurred one year before the facts relating to Count I,[6] a review of cases involving similar offenses tends to support by implication the proposition that the prior fraud in this case was not too remote. Herman v. United States, 220 F.2d 219 (4th Cir. 1955) (apparently several years prior); United States v. Walker, 176 F.2d 564 (2d Cir.), cert. denied, 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949) (by well over year prior).[7]

We do not find it necessary to consider the defendant's objection to the admission of Mrs. Wetrosky's testimony as to conversations with the defendant after they were married, nor to consider whether the Court erred in refusing to permit the defendant to inspect the Grand Jury testimony of Mrs. Wetrosky as both objections go to Count II.

▮ Finally, even if it be assumed that the trial court erred in receiving the objected to testimony or by refusing to permit the defendant to examine the Grand Jury testimony, a substantial injury to the rights of the accused must appear before a judgment will be reversed for the erroneous admission of evidence. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); National Dairy Products Corporation v. United States, 384 F.2d 457 (8th Cir. 1967); Cotton v. United States, 361 F.2d 673 (8th Cir. 1966); Myres v. United States, 174 F.2d 329 (8th Cir.), cert. denied, 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520 (1949); BARRON, FEDERAL PRACTICE AND PROCEDURE, Vol. IV, § 2578 (1951); MODEL CODE OF EVIDENCE, Rule 6 (1942).

▮▮ The language of this Court in Thomas v. United States, 281 F.2d 132 (8 Cir. 1960), is precisely applicable:

" * * * The burden is on the appellant to show both error and prejudice, Goldstein v. United States, 8 Cir., 63 F.2d 609, 614, and 'error which in a close case might call for a reversal may be disregarded as harmless where the evidence of guilt is strong.' Garner v. United States, 8 Cir., 277 F.2d 242, 245, citing Glasser v. United States, 315 U.S. 60, 67, 62 S.Ct. 457, 86 L.Ed. 680; Homan v. United States, 8 Cir., 279 F.2d 767, 773. *This is not a close case."*

---

6. The defendant places great emphasis on the fact that the witness, Ruth Russell, last loaned money to the defendant over one year before the loan involved in Count I. We doubt this is the relevant time factor. Ruth Russell last saw the defendant on December 14, 1964, and Mrs. Wetrosky first met him on July or September of 1965. Moreover, the defendant called Mrs. Russell in November of 1965, just as he called Mrs. Wetrosky long after he had abandoned her. Clearly a scheme to defraud does not necessarily begin and end on the day the money is received by the defendant.

7. There were two witnesses who testified concerning similar occurrences—Clara Walker and Sally Grehan. In regard to Clara Walker, he apparently was unable to defraud her after June 8, 1945. The fraud for which the defendant was being tried on occurred in February of 1947. The other similar occurrence was apparently at the same time as the fraud on which the defendant was tried. See, United States v. Walker, 190 F.2d 481 (2d Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951) (petition for rehearing also denied).

Id. at 136 (Emphasis added.). Lutwak v. United States, supra.

This case is not a close case as to guilt on Count I.

Affirmed.