**Patrick Michael CULLEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19300.**

United States Court of Appeals
Eighth Circuit.

April 2, 1969.

Raymond A. Bruntrager, St. Louis, Mo., for appellant, William L. Mason, Jr., Galena, Mo., on the brief.

Daniel R. O'Neill, Asst. U. S. Atty., St. Louis, Mo., for appellee, Veryl L. Rid-

dle, U. S. Atty., and Jim J. Shoemake, Asst. U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Patrick Michael Cullen was convicted in the United States District Court for the Eastern District of Missouri of robbing a federally-insured bank in violation of 18 U.S.C. § 2113(a). He was sentenced to twenty years imprisonment and now appeals. We affirm.

On September 27, 1967, a man identified by five eyewitnesses as Cullen entered the Valley Bank of Florissant, Missouri, and, exhibiting a pistol, forced the vice president of the bank to accompany him to each of the teller positions where he collected cash totaling approximately $27,000.00.

Officer Thomas O'Mara of the Florissant Police Department, responding to a teller alarm, arrived at the bank just as Cullen was running toward a parked car. O'Mara chased him on foot and, as Cullen entered his car and began to drive away, O'Mara fired five shots, the first two at the rear window of Cullen's auto "attempting to hit the subject behind the wheel", the third shot so as to strike the right rear fender, the fourth shot so as to strike the right front door and the fifth shot going astray. At the trial, FBI Agent Nolan testified that he has examined a car registered in Cullen's name in which he found a bullet hole in the rear window and a bullet fragment in the front of the car, which was identified as coming from the same caliber and type pistol as that used by Officer O'Mara. Agent Nolan also testified that the exterior of the right rear fender and the right front door of the car appeared to have been "reworked".

Cullen proposes four reasons for reversal of his conviction:

(1) The bank's records indicating loss of cash due to the robbery were improperly admitted into evidence and, absent these records, the government failed to prove that any money had been taken.

(2) The lower court erred in denying a motion for a bill of particulars directing the government to furnish the names, addresses and job titles of all employees of the bank known to have been present at the robbery.

(3) Agent Nolan's opinion that Cullen's car appeared to have been "reworked" was improperly admitted.

(4) The lower court erred in not instructing the jury on the weight to be given testimony identifying Cullen as the robber.

The bank records, consisting of tally sheets of funds on hand at the opening of business and audit sheets disclosing funds remaining at each teller's cage following visitation by the robber, were properly admitted into evidence. Under 28 U.S.C. § 1732(a),[1] records made in the regular course of business are admissible as evidence in federal courts under the business records exception to the hearsay rule. The appellant's contention that these audit rec-

---

1. Section 1732(a) reads:
 "Record made in regular course of business; photographic copies
 (a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
 All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.
 The term 'business', as used in this section, includes businesses, profession, occupation, and calling of every kind."

ords were not made in the regular course of business, since the calculation of loss from an armed robbery is not a regular business activity of a bank, is utterly lacking in merit. Tallying of cash received and disbursed is a fundamental and regular business operation of a bank. That such recording may occur after an unusual event such as a bank robbery does not alter the fact that the records were prepared in a regular manner. We are satisfied that these audit reports are legitimate business records and admissible under § 1732(a). After review of the record, we feel that the testimony of government witness Kelley, an officer of the bank and custodian of the audit records, provided sufficient foundation to warrant the trial court's admitting these records into evidence. Doss v. United States, 355 F.2d 663, 665–666 (8th Cir. 1966). See, United States v. Paxton, 403 F.2d 631 (3rd Cir. 1968).

■ It should be noted that there is sufficient evidence to support this conviction in the absence of bank records showing the exact amount of cash lost. The federal statute defines bank robbery as the taking by force and violence, or by intimidation, of "any property or money". 18 U.S.C. § 2113(a). A series of witnesses for the government testified that Cullen forcibly took money from the bank. Moreover, it was revealed at the trial that Cullen entrusted to a friend a sum of money which was identified by a bank teller, who recognized the wrapper on the bills, as part of the cash taken in the robbery. In this case, the evidence to support the conviction was overwhelming. Cf. Haas v. United States, 344 F.2d 56 (8th Cir. 1965); Caldwell v. United States, 338 F.2d 385 (8th Cir. 1964), cert. denied, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965).

■ Appellant also contends that he should have been provided with a list of the bank's employees so that he could have been able to support his argument that he was in the bank for the purpose of transacting legitimate business. Under Federal Rule of Criminal Procedure 7(f), the granting of a motion for a bill of particulars for such information is largely within the discretion of the trial court. Ross v. United States, 374 F.2d 97, 103–104 (8th Cir.) cert. denied, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967); 8 Moore's Federal Practice ¶ 7.06[2] (1968 ed.). In this case, the names and positions of these employees were readily available to the defendant through modest investigation. The denial of the motion for a bill of particulars in this case was a matter well within the discretion of the trial court. See, Ross v. United States, supra, 374 F.2d at 103–104; United States v. Chase, 372 F.2d 453, 466 (4th Cir.), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); Dean v. United States, 265 F.2d 544, 547 (8th Cir. 1959); United States v. Elliott, 266 F. Supp. 318, 327 (S.D.N.Y.1967); United States v. Margeson, 261 F.Supp. 628, 629 (E.D.Pa.1966). There was no showing that the information requested was essential to the preparation of the defendant's case and his reliance on language contained in Williams v. United States, 289 F.2d 598 (9th Cir. 1961), is therefore misplaced.

■ The appellant's contention that the trial court should not have allowed as evidence FBI Agent Nolan's opinion as to the condition of Cullen's automobile is similarly without merit. For the purpose of identifying this automobile as the one fired upon by Officer O'Mara, Nolan testified, and the government produced photographs of portions of Cullen's automobile in conjunction with this testimony, that certain areas of the exterior of Cullen's automobile appeared to have been "reworked". The appellant has not shown that the testimony as to the condition of the car was properly expert opinion which Agent Nolan was not qualified to render. The trial court correctly ruled that Nolan, even though not an automobile repairman, was qualified to render an opinion, based on personal observation, that the exterior of the car appeared to have been "reworked".

Wood v. United States, 361 F.2d 802, 805 (8th Cir.), *cert. denied*, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966); Batsell v. United States, 217 F.2d 257, 262 (8th Cir. 1954); United States v. Petrone, 185 F.2d 334 (2nd Cir. 1950), *cert. denied*, 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672 (1951).

Finally, the appellant contends that the trial court should have given the following instruction:

"Testimony tending to prove identity is to be scrutinized with extreme care.

No class of testimony is more uncertain and less to be relied upon than that as to identity.

The possibility of human error or mistake and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness's testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness's identification of the person or thing."

This instruction was properly refused. The trial court fairly instructed the jury as to the government's burden of proof and the facts to be considered by them before rendering a verdict. This proposed instruction is redundant in substance when considered in the context of the other instructions, fails to correctly state the law and is argumentative. Jones v. United States, 358 F.2d 383, 385–386 (8th Cir. 1966); Dranow v. United States, 307 F.2d 545, 568–569 (8th Cir. 1962). Compare, Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537, 541–542 (1966), with Salley v. United States, 122 U.S.App.D.C. 359, 353 F.2d 897 (1965).

Appellant has failed to demonstrate that the trial court committed any prejudicial error during the course of the trial. The conviction is, therefore, affirmed.