**UNITED STATES of America, Appellee,**

v.

**Wilford JACKSON, Appellant.**

**No. 73-1093.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1973.

Decided Aug. 9, 1973.

Paul F. Festerson, Omaha, Neb., for appellant.

Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before CLARK, Associate Justice,* and HEANEY and BRIGHT, Circuit Judges.

PER CURIAM.

Appellant, Wilford Jackson, appeals his conviction for aiding and abetting one Ronald Yarpe in the distribution of cocaine to a government agent in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Appellant was tried by jury,

---

* The Honorable Tom C. Clark, Retired Associate Justice of the United States Supreme Court, sitting by designation.

found guilty, and sentenced to ten years imprisonment. We affirm the conviction.

On this appeal, Jackson raises the following issues: (1) Was the evidence sufficient (a) to establish the prerequisite intent on the part of the defendant and (b) to establish that defendant did actually aid and abet in the distribution of a controlled substance? (2) Did the government fail to establish an adequate chain of custody of the purchased substance and its container so that neither the container nor testimony identifying the questioned substance as cocaine should have been admitted into evidence? (3) Did the evidence establish that defendant was the procuring agent for government investigators so that the trial judge should have either acquitted him or given an instruction to the effect that a government buyer cannot be convicted of aiding and abetting?

Since the thrust of defendant's arguments pertain to the nature and sufficiency of the evidence, a somewhat detailed discussion of the facts produced at trial is necessary. Officers Frazier and Ryan are government undercover agents who at the time of the events in question were investigating drug traffic in Omaha, Nebraska. Jewell Hutton, Jr., is an informer who is frequently paid by the government for infiltrating the drug market and then introducing government agents to people selling illegal drugs.

On the night of October 31, 1972, Hutton, who was then living in Omaha, called Frazier and Ryan, telling them that he could arrange for them to make a purchase of cocaine. Frazier and Ryan, posing as "cross-country robbers," joined Hutton at the Miller Hotel where they met a Ken Malo who in turn called defendant-Jackson, telling him he had some buyers for cocaine. Jackson went to the hotel where he met with Hutton and the agents and then took them to the apartment where he was living. At the apartment, Jackson made a phone call to Ronald Yarpe, telling him that he had a buyer for some cocaine. Jackson arranged to meet with Yarpe at Veys' Parking Lot on 42nd and Sunshine Drive. Agent-Frazier and defendant-Jackson then left the apartment to drive to the meeting place. While enroute, Jackson suggested to Frazier that he (Jackson) be given the money for the cocaine since Yarpe did not want to meet Frazier. Frazier told Jackson he did not trust him and refused to turn over the money for the drugs. Frazier and Jackson drove around the area of 42nd and Monroe for approximately ten minutes. This street is about a block from Veys' Parking Lot. Yarpe, a prosecution witness, stated that he arrived at the parking lot about 15 minutes after Jackson's call and waited there for about 15 minutes.

Jackson and Frazier did not make contact with Yarpe so they returned to the apartment, where, according to both agents, Jackson made a second phone call. Both agents and Hutton overheard portions of this phone call in which Jackson mentioned a red Volkswagen and 42nd and Monroe. At this point, the agents were suspicious of being set up for a robbery so they and Hutton left the apartment and drove to 42nd and Monroe where they saw a red Volkswagen. Frazier hailed it down and subsequently purchased a foil packet containing a white substance, later identified as cocaine, from the driver, Yarpe.

## I.

In passing on questions of the sufficiency of the evidence, we do not determine credibility nor weigh conflicting evidence. The evidence must be viewed in the light most favorable to the prosecution and the court must determine whether there is substantial evidence to support the verdict. United States v. Ammons, 464 F.2d 414 (8th Cir. 1972), cert. denied, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 253 (1972), and cases cited therein; see United States v. Atkins, 473 F.2d 308 (8th Cir.), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973).

■ Jackson does not complain of the specific instruction given by the court that the government must prove that the defendant aided and abetted the distribution of a controlled substance and did so knowingly and intentionally. However, he contends that the evidence showed that he merely intended to "rip off" the undercover agents, *i. e.*, steal their money and disappear, and thus he did not aid or abet nor intend to aid or abet the agents in procuring the cocaine. Although some evidence suggests that Jackson intended to "rip off" Frazier if Frazier had been foolish enough to fall for the ploy of giving his money to Jackson, the evidence strongly indicates that Jackson's purpose in meeting with Frazier and in contacting Yarpe was to arrange a sale of illegal drugs. The record discloses that Jackson brought the prospective drug purchasers to his apartment, that he made an actual contact with a drug dealer, and that his contact, Yarpe, actually possessed narcotics. Thus the evidence was sufficient for the jury to conclude that Jackson intended to arrange a sale of illegal drugs between the agents and Yarpe, and that, largely due to his efforts, such a sale was indeed consummated. Moreover, the "rip-off" motive offered by Jackson as a basis for his participation does not negate a concurrent motive to aid and abet the distribution of cocaine in the event that Frazier would not give his money to Jackson.

## II.

In regard to the chain of custody issue, the following additional evidence is material. After Officer Frazier received the tinfoil packet from Yarpe containing a white, powdery substance, he kept it in his possession until he took it to the Drug Bureau in Omaha where he weighed it and put it into a lock-seal plastic bag. He placed this plastic bag inside of a lock-seal manila envelope which could not be opened without destruction of the envelope. Frazier and Ryan initialed and dated the envelope, and then Frazier locked it in the Omaha

Bureau safe where it remained until he personally transported it to Kansas City, Missouri, and then locked it in the Drug Abuse Law Enforcement safe. Later he removed the envelope from this safe, checked to see if the seals were intact, placed it in a mailing envelope, and sent the envelope by registered, special delivery, air mail to the Bureau of Narcotics and Dangerous Drugs Regional Laboratory in Chicago, Illinois. At the trial Frazier identified the lock-seal manila envelope (Exhibit No. 1) as the one he had initialed and in which he had placed the plastic bag containing the packet and its contents obtained from Yarpe. He also identified the mailing envelope (Exhibit No. 2).

Rasmussen, a forensic chemist for the Regional Laboratory in Chicago, testified that the registered, air mail package was received at the laboratory in Chicago, Illinois, on November 8, 1972. He stated that Exhibit No. 1, the lock-seal manila envelope, arrived sealed with the lock-seals still intact. He opened the envelope on December 6, 1972. At that time he made a notation on the envelope of the date and his initials. He stated that he found the zip-lock plastic bag and the foil packet inside the manila envelope. He analyzed the contents of the foil packet, then returned the contents to the packets, and placed them in the original plastic bag. He placed this bag into a new lock-seal envelope. He brought this envelope to the trial with the seal still intact where he initialed, dated, and opened it while on the witness stand.

■ Although the defendant raises several objections to the above-described procedure, suffice it to say that we find the chain of custody and the identification of the foil packet and its contents meticulous and exacting. The prevention of tampering with or misidentification of evidence is vital to the admissibility of that evidence at trial. Here the government has taken the reasonable and necessary precautions to avoid any tampering with or misidentification of the substance purchased by Frazier

from Yarpe. While the government might have provided further information as to who had access to the safes in Omaha and Kansas City and on the receiving and storing procedures at the laboratory in Chicago, we do not find these omissions significant. The substance and its containers were sufficiently identified and verified to justify their admission into evidence. *See* Gallego v. United States, 276 F.2d 914 (9th Cir. 1960).

### III.

Defendant primarily relies on United States v. Moses, 220 F.2d 166 (3d Cir. 1955) to support his contention that he served as a procuring agent for government investigators and, as such, was entitled to the following instruction:

> You are instructed that one who assists the purchase of a controlled substance only as an accommodation for the alleged buyer cannot be convicted of aiding and abetting the distribution of a controlled substance. If you find that the defendant acted solely on behalf of Government Agents in assisting a purchase of a controlled substance, and not on behalf of himself or on behalf of the alleged seller, whether or not the defendant knew that the buyers were Government Agents, you cannot convict him.

> The prosecution has the burden of establishing to your satisfaction beyond a reasonable doubt that the defendant was acting on behalf of or for the benefit of the alleged seller or himself in the distribution, and not on behalf

of or as the agent of the Government Agents.

■ Aside from the fact that the charges in *Moses* were brought under a previous drug control statute while the present charge arises under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., *Moses* is otherwise distinguishable on its facts.[1] In *Moses*, the defendant did not actively seek out or assist the seller, although she was charged in connection with the crime of selling. *Moses, supra,* 220 F.2d at 168. In the present case the defendant is charged with aiding and abetting Yarpe in the distribution of a controlled substance, and his activities clearly indicate affirmative action on his part in contacting the seller and in bringing the buyer and seller together. Without retreading the evidentiary grounds already discussed, it is evident that the affirmative involvement of Jackson in the consummation of the sale to the agents was clearly more extensive than that of the defendant in *Moses*. *Cf. Atkins, supra,* 473 F.2d 308. Additionally, we note that the trial judge properly gave the jury the standard aiding and abetting instruction formulated from Judge Hand's opinion in United States v. Peoni, 100 F.2d 401 (2d Cir. 1938). Judge Hand's definition of aiding and abetting was adopted by the Supreme Court in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949). We find no error in the district court's rejection of the proposed instruction.

The conviction is affirmed.

---

1. The Act involved in *Moses* treated buying and selling as separate and distinct offenses. The new statute provides:
   > (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

   > (1) to manufacture, *distribute*, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; * * * [21 U.S.C. § 841(a)(1) (emphasis added).]