**UNITED STATES of America,
Appellee,**

v.

**Walter Louis ALLSUP, a/k/a Walter
Lewis Allsup, Appellant.**

Nos. 73–1081, 73–1232.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Oct. 19, 1973.

Peter Denger, Rock Island, Ill., for appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

The dispositive issue on this appeal is whether the trial court erred in permitting the government to "impeach" the court's witness by offering the testimony of two witnesses as to oral out-of-court statements previously given by the court's witness allegedly inconsistent with his trial testimony. We hold the court erred and that under the circumstances a new trial must be granted.

Defendant was indicted in a 3 count indictment charging interstate transportation of stolen motor vehicles: Count I involved a 1963 Ford implement truck from Southern Illinois to Iowa on June 23, 1971; Count II a John Deere 4020 tractor on the same date (the proof indicated this tractor was hauled on the truck in Count I which was then abandoned); Count III a John Deere 450 crawler from Ohio to Iowa on October 6, 1971.

Defendant filed a pretrial motion for severance of Count III upon the basis that the transaction involved occurred over three months after the events alleged in Counts I and II, and the transportation was alleged to be from Ohio whereas the originating state was Illinois in the other counts. The motion was denied. Immediately prior to trial defendant renewed his motion for severance with the added ground that if the government failed to prove Count III, the prejudice to defendant would call for a mistrial. The motion was denied. At the close of the government's case, defendant moved for judgment of acquittal on Count III grounded upon insufficiency of the evidence and particularly urged that the only evidence pointing to guilt was "impeaching" evidence offered by the government in an attempt to impeach the court's witness. The trial court sustained the motion upon the grounds there was insufficient evidence of guilt to submit Count III to the jury. Defendant offered no evidence. The jury returned verdicts of guilt on Counts I and II.

In this appeal defendant urges the trial court erred in (1) denying his motion for severance; (2) permitting the government to call the witness Gabeline (upon whose premises the stolen vehicles in Count II and III were ultimately found) as a court witness and then under the guise of impeaching his credibility getting before the jury the testimony of two other witnesses which incriminated the defendant. We confine our comments to the latter contention.

The evidence favorable to the government disclosed that on June 22, 1971 defendant and one Everett Conover, after an evening of drinking beer, drove from Keokuk, Iowa across the Mississippi river and then south about 8 miles to Sutter, Illinois where they stole the Ford Implement truck referred to in Count I. They then proceeded to Gabeline's farm

where the tractor was sold to Gabeline who made out a check to Conover for $750 as part payment. The Ford truck was abandoned by defendant and Conover, who then drove to Burlington, Iowa where Conover cashed the check and gave $100 to defendant. Later that day the abandoned Ford truck (Count I) was recovered by local authorities. In early January 1972 the F.B.I. visited the Gabeline farm, recovered the 4020 tractor (Count II) and after visiting with Gabeline checked out the serial number on the 450 crawler (Count III) and ascertained it had been stolen from its owner in Ohio.

During the course of the trial, counsel for the government moved the court to call Gabeline, recipient of the two stolen vehicles, as a court witness. The court and defense counsel were advised that originally the government had subpoenaed Gabeline and intended to put him on the stand; that initially Gabeline had been interrogated by an agent of the F.B.I. and two local officials and had made certain statements with respect to dealing with the defendant and Conover with respect to purchasing the tractor (Count II) and that he had also purchased the crawler (Count III) from defendant; that thereafter Gabeline was called before the grand jury and testified almost to the reverse, i. e., that he dealt only with Conover regarding the 4020 tractor and hadn't seen defendant the day in question; that later he bought the 450 crawler from one, R. S. Smith, that defendant was in the area but wouldn't say that defendant heard the conversations regarding the sale of the crawler; that the morning of the trial the United States Attorney had visited with Gabeline "and for the life of me, your Honor, I still can't figure out what he's going to testify to;" that Gabeline should be made a court witness and both sides be given an opportunity to cross-examine him. Copies of a summary of Gabeline's oral statement to the F.B.I. and local authorities, plus a transcript of his grand jury testimony, were furnished the court and defense counsel.

Defendant resisted the motion pointing out that the United States Attorney could not show surprise; that although the court had broad discretion, the matter of calling a witness as a court witness should be exercised with extreme caution. The court then ruled that Gabeline should be called as a court witness, explaining his ruling as follows:

Gentlemen, I can see the Government's reluctance to call Mr. Gabeline in view of his testimony before the grand jury that is in conflict with the statements given to the investigating officers. I can also understand why the defendant might be reluctant to call him and subject him to cross-examination and impeachment after having been considered his own witness. And as I have also indicated, I think it's testimony that in the interests of justice should be in this record. It appears to me less prejudicial to both parties if the Court does call Mr. Gabeline as his own witness. To what extent I will permit impeachment, impeachment will be permitted to an extent, but there is a danger, in my opinion, of too extensive an impeachment, of the possibility that might cause some prejudice to this defendant on the first two counts. And I see no problem in Count III as far as prejudice is concerned, because if he testified the way he did before the grand jury, there will be no Count III. There is a possibility that the proof may be otherwise and would make a case on Count III. And if he does testify, you are certainly entitled to impeach him, both of you. On the other hand, I may, in what I consider the interests of justice, put some limitations on it so that it won't be blown up all out of proportion.

In answer to an inquiry by the United States Attorney with respect to the limitation on impeachment, the Court added further:

Well, yes, there would have to be objection, of course, before I would call a halt to it, but I think the Gov-

ernment should be permitted to put the witnesses on the stand and show the prior inconsistent statements, but to go into an extensive examination concerning those statements is the thing that I am concerned about now. The cases seem clear that you are entitled to impeach, and certainly that's necessary for impeachment.

Thereafter Gabeline was called as a court's witness. Under interrogation by the United States Attorney he testified that defendant and Conover visited his premises in June 1971, and defendant, a previous acquaintance of his, introduced Conover to him. Conover then negotiated the sale of the Count II tractor to him. Approximately a week later at about 7:00 a.m., Conover delivered the tractor. Gabeline did not observe anyone with him. At that time Gabeline gave Conover a check for $750 in partial payment for the tractor. The United States Attorney then inquired about Gabeline's visit with an F.B.I. agent and two local officials in early 1972. In the process he handed Gabeline a copy of an F.B.I. summary concerning the visit and asked him to look it over for the purpose of refreshing his memory. After doing so the witness testified he did not recall who negotiated the sale of the tractor and that he could not recall what he said to the agents with respect to who negotiated the sale. He did not remember whether he told the officers there was one or two meetings concerning his purchase of the tractor. He recalled telling the agents he thought the crawler (Count III) might be hot too and ought to be checked out. He bought it from R. S. Smith paying approximately $1400. He identified a $1000 check he wrote to Smith for it and also one for $200 to R. S. Smith. The balance was cash. He stated defendant and R. S. Smith were in the vicinity cutting trees at the time of the crawler transaction. He did not remember telling the officers or anyone that he bought the crawler from defendant.

The United States Attorney then called two local officials who testified concerning their visit in January 1972 with witness Gabeline. Each testified that Gabeline stated he bought the 4020 tractor from Walter Allsup and that he bought the 450 crawler tractor from the defendant. Defendant made no further objection when these two local officials were called. Although additional objection might have further alerted the court to the error involved, we do not consider this controlling inasmuch as the court had already indicated that the government should be permitted to put the witnesses on the stand and show prior inconsistent statements for purposes of impeachment. Since the issue had been fairly presented to the trial court, argued and decided ". . . it is neither desirable nor seemly for counsel to continually repeat their objections to the same class of testimony * * *." Sanchez v. United States, 293 F.2d 260, 264–265 (CA8 1961).

We have consistently adhered to the orthodox view that out-of-court statements cannot be substituted for courtroom testimony even though the witness is present to be cross-examined by the other side. United States v. Rainwater, 283 F.2d 386 (CA8 1960); Goings v. United States, 377 F.2d 753, 761–762 (CA8 1967) and United States v. Watson, 450 F.2d 290 (CA8 1971). We have recognized that distinguished professors and writers have urged the acceptance of impeaching hearsay testimony as substantive evidence under these circumstances. See discussion, *Rainwater, Goings, supra.* Rule 801(d)(1) of the proposed Rules of Evidence for United States Courts and Magistrates submitted by the Supreme Court to the Congress would permit prior inconsistent statements to be admissible as substantive evidence where the declarant testifies at the trial and is subject to cross-examination concerning the statement. The House Subcommittee considering the proposed Rules has

published a tentative draft of H.R. 5463, a bill to establish Federal Rules of Evidence, which modified 801(d)(1) by adding:

> Provided, That a prior inconsistent statement under clause (A) shall not be admissible as proof of the facts stated unless it was given under oath and subject to the penalty or perjury at a trial or hearing or in a deposition or before a grand jury;

H.R.Rep.No.5463, 93d Cong., 1st Sess., June 28, 1973; 42 U.S.L.W. No. 3, Supplement July 17, 1973.[1]

For the present we shall continue to adhere to the orthodox view.

■ The general rule also requires that before a party may impeach its own witness "surprise" and "affirmative" damage must be established. See *Watson, supra; Goings, supra*; United States v. Dunmore, 446 F.2d 1214, 1220–1221 (CA8 1971). In the instant case the government could not claim surprise in view of Gabeline's more recent sworn testimony before the grand jury which was inconsistent with his prior oral statement to the F.B.I. agent and two local officials. Neither did the government establish "affirmative damage".

■■ Gabeline testified he did not recall what he told the agents during their interview. He did not deny making the statements implicating defendant, but insisted that he dealt with Conover for one tractor and with R. S. Smith on the crawler. Checks offered in evidence were made payable to these named individuals. (The Smith check was ultimately not received in evidence since Count III was withdrawn by the Court.) We recognize that loss of memory may be feigned and thus subject to impeachment. *See*, United States v. Insana, 423 F.2d 1165, 1169–1170 (CA2 1970). In this case the government's claim of "affirmative damage" would be marginal at best. We are satisfied the government did not meet the test of affirmative damage when Gabeline's testimony is reviewed in its entirety.

■ The government, however, seems to contend that since Gabeline was called as a court witness the general rules with respect to impeachment and the use of such testimony do not apply. We have sanctioned the limited use of court's witnesses. "The practice in criminal cases of calling someone as a court's witness, while seldom used and not particularly desirable, is recognized as proper in both state and federal courts." Smith v. United States, 331 F.2d 265 (CA8 1964). It is generally recognized that when such a witness is called, either of the parties is entitled to impeach him by the usual methods, including proof of prior inconsistent statements. United States v. Browne, 313 F.2d 197 (CA2 1963); United States v. Lutwak, 195 F.2d 748, 754–755; Litsinger v. United States, 44 F.2d 45, 47 (CA7 1930). "The result of one being called as a court's witness is not too dissimilar from that of having a witness adjudged a hostile or a surprise witness." *Smith, supra*, 331 F.2d at 273.

---

i. Subcommittee Note

Present Federal law generally permits the use of prior inconsistent statements of a witness for impeachment only. Subdivision (d)(1) as proposed by the Court would permit such statements to be admissible as substantive evidence. Although there was some support expressed for the Court Rule, based largely on the need to counteract the effect of witness intimidation, the Subcommittee tentatively decided to adopt a compromise version of the Rule patterned after the position of the Second Circuit. See United States v. De Sisto, 329 F.2d 929, cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747; United States v. Cunningham, 446 F.2d

194. The Rule as approved draws a distinction between types of prior inconsistent statements and allows only those made before a grand jury, or at a trial or hearing, or in a deposition, to be admissible for their truth. The rationale for the Subcommittee's decision was that (1) unlike in other situations, there can be no dispute as to whether the prior statement was made; and (2) the context of a formal proceeding and an oath provides firm additional assurances of the reliability of the statement. The Subcommittee intends that nothing in the Rule should be deemed to impair the secrecy of grand jury investigations.

We recognize that the trial court should have considerable discretion in determining whether or not to permit the calling of a court's witness. We should not interfere unless there has been an abuse of discretion which is prejudicial to the defendant. *Smith, supra*; United States v. Wilson, 447 F.2d 1, 8–9 (CA9 1971); Estrella-Ortega v. United States, 423 F.2d 509 (CA9 1970).

We would not be inclined to reverse the trial court for permitting the witness Gabeline to be called as a court witness or in permitting each side to cross-examine. Gabeline was the purchaser of two stolen vehicles, one of which was delivered in the early morning hours.[2] He had given evasive testimony before the grand jury, some time after advising the three officers that defendant had purchased the vehicle in question. The error was in permitting the government to extend the impeachment by placing into evidence through two local officers the out-of-court statements by Gabeline that he had purchased the vehicles in question from defendant. Gabeline testified he did not remember telling the officials that he had purchased the vehicles from defendant. He did not deny making the statements. *See* Goings v. United States, *supra*, 377 F.2d at 758–759; United States v. Cunningham, 446 F.2d 194, 197 (CA2 1971).

At the time the government requested that Gabeline be made a court's witness, the trial court expressed its concern over the problem of impeachment and its possible prejudice to the defendant with respect to Counts I and II. Nevertheless, the government proceeded with its "impeachment" to such an extent that we are compelled to hold that this cause must be remanded for a new trial. The trial court's instruction to the jury to limit its consideration of the evidence of prior inconsistent statements by Gabeline solely to the issue of his credibility does not suffice to cure the evil. In this situation it was asking too much. *See,* United States v. De Sisto, 329 F.2d 929, 933 (CA2 1964).

The evidence of guilt is not sufficiently strong to permit us to say that the admission of "impeachment" testimony was harmless beyond a reasonable doubt. United States v. Mancino, 468 F.2d 1350 (CA8 1972). We cannot say the evidence of guilt was overwhelming or that it leaves us with no reasonable doubt that the jury would have reached the same result without hearing the "impeachment" testimony. Milton v. Wainwright, 407 U.S. 371, 377–378, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1971). The government's case to a large extent rested upon the evasive testimony of defendant's alleged accomplice, Conover, a four-time convicted felon. The impact of two law enforcement officers testifying that the recipient of two stolen vehicles told them defendant sold them to him does not leave us with an impression of harmless error.

Reversed and remanded for new trial.

---

**2.** Accomplice Conover had testified the tractor was delivered as it was breaking daylight—between 4:30 and 5:00 o'clock.