UNITED STATES of America,
Appellee,

v.

William Marcellus PARKER, Appellant.

No. 73–1138.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1973.

Decided Nov. 27, 1973.

Rehearing and Rehearing En Banc
Denied Dec. 27, 1973.

Albert L. Harvey, Des Moines, Iowa, for appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal from a jury conviction for distributing heroin questions trial court rulings on evidentiary matters.

Appellant Parker and George William Carter were charged in two counts of an indictment with distributing heroin on two occasions on June 19, 1972. The trial court upon motions by each defendant granted separate trials for the rea-

son that since Carter was charged in a third count with an additional sale of heroin the interest of justice would better be served by separate trials. Carter was tried first and convicted.[1] Appellant received concurrent 10 year sentences plus 3 years parole on each count. (21 U.S.C. § 841(b)(1)(A))

The evidence disclosed that on two occasions on June 19, 1972 appellant participated in the distrbution and sale of heroin to informant Edward Mitchell. The procedure followed was essentially the same with respect to each purchase. Informant Mitchell was strip searched at the Des Moines Office of the Federal Bureau of Narcotics and Dangerous Drugs, supplied with $140 cash, then driven to the general area of defendant Carter's residence by Dennis Harker, Special Agent for the Bureau; surveillance was established over informant by Harker and other agents; Harker observed informant enter the Carter residence, exit therefrom about ten minutes later and then join Harker in his auto where he displayed 18 capsules later identified as heroin which Mitchell testified he purchased from defendant Carter and appellant Parker (Count II—afternoon purchase); Harker and informant returned to the Bureau office where the capsules were field tested, then placed in a lockseal envelope, lodged in the safe and the following day mailed by registered mail to the Bureau laboratory in Chicago where the substance was identified as containing heroin.

About 10 p. m. the same day informant and agent Harker returned to the Carter residence where informant Mitchell again purchased heroin from Carter and appellant (Count I). This time the transaction took place on the open porch of the Carter residence and was witnessed by Agent Harker from his car across the street. He testified,

"* * * Mr. Parker handed something to Mr. Mitchell from his pocket * * * Mr. Mitchell handed Mr. Parker what appeared to be currency." The same procedure of strip search, surveillance, field test, mailing and lab test was followed with respect to the night purchase (Count I) as was followed with the afternoon purchase.

Informant Mitchell testified as to both transactions, indicating that in the afternoon while he was inside the Carter residence appellant gave him 2 capsules and defendant Carter the remaining 16 capsules; that he gave some money to Carter and some to appellant; and that he told Carter he was coming back later that night to buy a spoon (heroin); that evening he returned to the Carter residence where on the front porch he again purchased heroin giving Carter $165; appellant was present with Carter on the porch during the transaction.

Appellant testified very briefly[2] in his own behalf, stating that he did not recall the day of June 19, 1972, nor his activity on that date; he further denied being involved in the transactions referred to in Counts I and II of the indictment. In addition, he offered testimony of witnesses tending to establish that a shoplifting charge against informant Mitchell which occurred some 3 months after the heroin purchases was dismissed for reasons other than his guilt or innocence. Through cross-examination of Agent Harker appellant established that informant Mitchell had been convicted of two felonies (theft) and one misdemeanor. Also that he had been arrested on several occasions.

The trial lasted some 5 days with the jury returning its verdict of guilt after two hours deliberation. The evidence of guilt was strong and the sufficiency thereof to support the verdict is not challenged.

---

1. His conviction was affirmed in an unpublished opinion of this Court. United States v. George William Carter, No. 73–1133 September 18, 1973. Matters raised in appeal differ from those raised here.

2. His direct testimony occupies less than a page of the transcript, total testimony less than 3 pages.

*Exhibits*

Appellant urges that the trial court erred in admitting into evidence and sending to the jury certain memoranda (memo) written by Agent Harker upon the lockseal envelope containing the heroin and a "Report of Property Collected, Purchased or Seized" (Report) which was made out in part by Agent Harker and in part by the chemist at the Bureau laboratory. The memo on the lockseal envelope (exhibit 13) objected to included:

Name: Carter, George, et al

Address: 1208 11th St., Des Moines, Iowa

Evidence: Heroin

Purchased by: SL220003

Where obtained: 1208 11th St., Des Moines

Date: 6/19/72

Time: 10:45 P.M.

Amount Paid: $165.00

Witnesses: S/As Thornton, Harker, Overbaugh, BNDD Agents A. Way & H. Smith, Iowa Div. Narcotics Sgt. P. McVey & J. Trotter DMPD

Person Reporting Case: S/A Dennis Harker

Defendant objected to the same as being hearsay and not the best evidence. The trial court ruled that the exhibit would be admitted and that before submitting it to the jury the court would determine whether any of the material would be stricken. Ultimately exhibit 13 and a similar exhibit (exhibit 12) with reference to the heroin purchased in the afternoon were admitted. Exhibit 7 (appendix 1) and a similar exhibit, exhibit 6, were likewise received in evidence over objections that they contained hearsay, not the best evidence, and that exhibit 7 had been altered. The exhibits were not received in evidence until witnesses who recorded the disputed material had testified with respect thereto. The witnesses included: Agent Harker, who made out the memos on the lockseal envelope and the upper portion of the Report (lines 1–14); Ferris H. Van Sickle, who conducted the chemical tests and testified with respect to the heroin contained in the lockseal envelopes, testified with respect to the lower portion of exhibits 6 and 7 denominated Laboratory Evidence Receipt Report and Laboratory Analysis/Comparison Report.[3]

After the chemist testified with respect to the laboratory portion of the Reports, appellant added to his objection:

The witness is present in the court room and has testified substantially to everything that's on the report. This tends to compound his testimony and reduce it to writing for observation, when other testimony in the trial was not reduced to writing for observation. It is a cumulative matter and is a hearsay statement as far as this trial is concerned.

Ultimately the court admitted the exhibits and they were sent to the jury along with other exhibits.

Appellant now urges that our decision in Sanchez v. United States, 293 F.2d 260 (CA8 1961)[3a] requires reversal. The government urges alternately that *Sanchez* is wrong and should be overruled, it is distinguishable, and in any event the evidence of guilt is so overwhelming that if error occurred, it was harmless. It is our view that *Sanchez* is distinguishable.

A persuasive argument can be made that at least the chemist's portion of the exhibit is admissible under the Business Records Act 28 U.S.C. § 1732(a). United States v. Ware, 247 F. 2d 698 (CA7 1957). The making of the chemical analysis of the substance in question is a part of the daily routine of

---

3. The exhibits were filled in shortly after the events occurred.

3a. *See,* United States v. Brown, 451 F.2d 1231 (CA5 1971); United States v. Ware, 247 F. 2d 698 (CA7 1957); *See also,* United States v. Adams, 385 F.2d 548 (CA2 1967).

the Bureau laboratory and it is a part of this routine to record a description of the item received, its weight, the dilutent, the adulterants and the active drug ingredient.[4] In other words it was in the regular course of the business of the Bureau laboratory to make the tests and record the results. *See*, Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 87 L.Ed. 645 (1942). *Compare*, Kay v. United States, 255 F.2d 476, 480 (CA4 1958), where a certificate showing the alcoholic content of a blood sample was received in evidence; Blanchard v. United States, 360 F.2d 318 (CA5 1966), certificate by an official of the Federal Bureau of Narcotics that heroin in appellant's case had been destroyed was held to be admissible under Business Records Act, 28 U.S.C. § 1732; Harris v. Smith, 372 F.2d 806 (CA8 1967), hospital records received; however, in Picker X-Ray Corp. v. Frerker, 405 F.2d 916, 922–924 (CA8 1969) hospital records which had no relationship to treatment but were related to an incident that could result in a lawsuit were held not to be admissible; Cullen v. United States, 408 F.2d 1178 (CA8 1969) bank records indicating loss of cash following a robbery were admitted; LaPorte v. United States, 300 F.2d 878 (CA9 1962) "Did not Report" in Selective Service file admitted to prove fact asserted under 28 U.S.C. § 1732 and § 1733; *see generally*, M. Ladd and R. Carlson, Cases and Materials on Evidence, 952–977.

█ It is generally recognized that "The purpose of the Business Records Act was to allow reliable and accurate records to be introduced without the necessity of calling the person who made the entry. The Act was not designed, however, to facilitate the introduction of hearsay as to which the reporter, if he appeared in person, would not be allowed to testify." United States v. Burruss, 418 F.2d 677, 678 (CA4 1969). In the latter case theft reports were held admissible to show a car was reported stolen, but not that it was in fact stolen.

*Accord,* United States v. Shiver, 414 F.2d 461 (CA5 1961); United States v. Graham, 391 F.2d 439, 447–448 (CA6 1968).

█ The upper portion of the Reports and the memos on the lockseal envelopes were filled out by Agent Harker who had personal knowledge of the significant facts stated thereon, thus we are not presented with the problem of hearsay discussed in *Burruss, supra,* except for the afternoon sale to informant Mitchell which took place inside the defendant Carter's house. However, this transaction was testified to in detail by informant. Thus the information contained in the exhibits was cumulative. United States v. Thompkins, 487 F.2d 146 (CA8 1973).

This brings us to what we perceive to be the thrust of *Sanchez, supra,* and the cases cited in accord therewith. The mischief is "The jury thus had before it a neat condensation of the government's whole case against the defendant. The government's witnesses in effect accompanied the jury into the jury room." *Sanchez, supra,* 293 F.2d at 269.

█ The general rule is that exhibits properly admitted into evidence may be sent to the jury room. United States v. Jackson, 477 F.2d 879 (CA8 1973); United States v. Warner, 428 F.2d 730, 736–738 (CA8 1970). Considerable discretion in sending exhibits to the jury must be granted the trial court. Probative value of evidence admitted must be weighed against possible prejudice that may result if the exhibits are sent to the jury. The trial judge who has heard the evidence and observed at first hand the issues as they developed during the trial can best determine whether exhibits should be received and sent to the jury. We should not interfere unless there is a clear abuse of discretion. United States v. Johnson, 319 U.S. 503, 519–520, 63 S. Ct. 1233, 87 L.Ed. 1546 (1942).

Reports such as were used here, and the memoranda on the lockseal envelopes

---

4. Precise figures were not given but from the chemist's testimony a fair inference can be drawn that several similar exhibits are received daily for laboratory analysis.

serve a valuable function vital to admissibility in preventing "the tampering with or misidentification" of the evidence during the chain of custody prior to the chemical analysis [5] and prior to trial. *See,* United States v. Wilford Jackson, 482 F.2d 1264 (CA8 1973).

■ In the instant case prior to the admission of the disputed exhibits into evidence appellant vigorously cross-examined Agent Harker with respect to the handling of the lockseal envelopes and the content of his Reports. In fact counsel pointed up the error on exhibit # 7 where in line 13, Remarks, Bureau exhibit # 2 was typed instead of # 3.[6] Later when the exhibit was offered in evidence appellant made the additional objection: "It can be discerned from looking at the exhibit that its been altered." Although we have not been favored with a transcript of the oral arguments, it can fairly be said that in the cross-examination of Harker appellant forcefully attacked the handling of the exhibits and the written entries thereon. Under these circumstances it certainly was within the discretion of the trial court to admit the exhibits and send them to the jury room.

We think *Sanchez, supra* is distinguishable since in that case there is no indication that objection was made by appellant that the exhibits had been altered, or that the chain of custody and the manner of handling the controlled substance was being questioned. *See also,* Special Concurrence in *Sanchez,* 293 F.2d at 270. Other distinguishing features will be discussed in connection with the next point raised by appellant.

Had an appropriate request been made, the trial court might well have instructed the jury that the writing was received for whatever bearing it might have on the issue of custody and the government's handling of the disputed substance and should be considered for no other purpose.[6a] However, we are satisfied that in this case the jury fully understood the issues involved and that in the final analysis the government's case rested largely on the credibility of Agent Harker and on Count II with the testimony of informant Mitchell. We are convinced that error, if any occurred, in admitting the exhibits was not prejudicial.

*Oral Hearsay Testimony*

On the redirect examination of Agent Harker the government made further inquiry concerning the afternoon purchase by informant Mitchell as follows:

Q. And did you have any conversation with Mr. Mitchell at the time he gave you the pills—capsules?

A. Yes sir.

Q. What was that conversation?

A. I asked him who he bought them from. He replied, "Mr. Parker and Mr. Carter."

(Appellant's counsel): Your Honor, may that go out as hearsay, please.

The Court: Where did this take place, Mr. Donielson?

Through further questions by the United States Attorney the witness related that the conversation took place when informant entered the Agent's automobile, which was about five minutes after the Agent saw him leave the residence where the purchase took place. The record then discloses that counsel for appellant requested "your Honor, may we approach the Bench for a minute?" (Discussion at the Bench among the Court and counsel, off the record). The Court: "The objection will be

---

5. We have held that physical presence of the heroin as an exhibit received in evidence was not essential to establish that the crime charged had been committed. Ware v. United States, 259 F.2d 442, 444 (CA8 1958); *accord,* Blanchard v. United States, *supra,* 360 F.2d at 320.

6. Compare appendix lines 13 and 5.

6a. In cases where custody is not in issue and proper objection is made, the sending of such exhibits to the jury might well be found to be error.

overruled at this time." We, of course, have no way of knowing whether the conversation at the bench influenced the Court's ruling and we will not speculate. We do know that a few minutes later the witness without objection testified: "He (Informant) stated that he got 16 capsules from Mr. Carter and two from Mr. Parker."

Nevertheless, upon this record we hold that appellant, without repeating his objection preserved his hearsay objection. *See,* United States v. Allsup, 485 F.2d 287 (CA8 1973). Appellant now urges that the testimony was hearsay and erroneously admitted under our holding in *Sanchez, supra.* The government contends that the evidence was admissible under the Proposed Rules of Evidence 803(1) Present Sense Impression and 803(2) Excited Utterance, 51 F.R.D. 315, 419. Since these Rules have not been adopted we express no opinion with respect to whether the Proposed Rule 803(1) would allow admission of the testimony to prove the truth of the statement made by informant.

We are satisfied that *Sanchez, supra* is clearly distinguishable. There a vast amount of detailed hearsay testimony was admitted to bolster the testimony of an informant for whose credibility the government refused to vouch. 293 F.2d at 265.[7]

 Here the claimed hearsay was limited to informant's report of the afternoon purchase some five minutes after the purchase took place, to which, informant later testified in person and about which he was thoroughly cross-examined. At the most it was cumulative evidence.[8] It corroborated informant's own testimony as to what actually took place and as to what he reported to Agent Harker. It should further be noted that Agent Harker personally witnessed the night sale (Count I). Con-

current sentences were imposed on each count. Whatever error existed was harmless.

### Motion for Mistrial

Appellant contends the trial court erred in refusing to grant a mistrial because the government improperly injected appellant's reputation as an issue in the case.

Appellant at the commencement of his cross-examination of Agent Harker interrogated him with respect to how many times he had seen appellant since the heroin purchases in question, which Harker testified was once during the instant trial; whether prior to the purchases he had seen a picture of appellant, and in so doing ultimately elicited the following answer: "I did not see a picture beforehand. Correction, I saw approximately 20 pictures of known narcotics violators, and his picture was one of them. Before I ever went on that date." Upon objection the trial court struck the answer and admonished the jury not to consider the same. Later during the proceedings, out of the presence of the jury, appellant moved for a mistrial because of the prejudice created. The trial court in overruling the motion observed, "I don't believe that the statement, which was promptly stricken upon motion, and in a manner that was not particularly inflammatory —I think the defense counsel was well-advised to treat it lightly at the time, to reduce any possible additional prejudice."

 We have made it abundantly clear that unless a defendant has placed his general character in issue[9] it is improper to show that he is of bad character. United States v. Crawford, 438 F. 2d 441 (CA8 1971). Thus the reference by the witness to appellant's picture

---

7. *Sanchez,* although a three-count indictment involved one transaction with marihuana; the hearsay admitted was extensive. It was a thin case. 293 F.2d at 270.

8. United States v. Thompkins, *supra.*

9. The event complained of occurred during the government's case in chief. Later appellant testified and on cross-examination admitted he had been convicted of a felony.

among a group of known narcotics violators was improper and correctly stricken by the trial court. There is no indication that the government sought to elicit the information given. We cannot assume the jury failed to heed the admonition of the trial court to not consider the same. Under the circumstances we cannot say that the trial court abused its discretion in refusing to declare a mistrial. McWilliams v. United States, 394 F.2d 41 (CA8 1968).

Appellant cites another instance [10] where Agent Harker volunterred information derogatory to his reputation which was not objected to at the time. Unless appropriate motion to strike, for a cautionary instruction, or for mistrial are made at the appropriate time the error is not properly preserved for review on appeal. United States v. Carter, 448 F.2d 1245, (CA8 1971); United States v. Cable, 446 F.2d 1007 (CA8 1971).

We, of course, must also review under the plain error rule, Rule 52(b) Fed.R.Crim.P. We have scrutinized the entire record, with particular attention to Agent Harker's testimony, and the allegation that appellant was prejudiced by the volunteer statements concerning appellant just referred to. Agent Harker was subjected to exhaustive cross-examination [11]—hard blows were struck with respect to his use of informant Mitchell, a man of questionable character, and the procedures followed by Harker in supervising the purchase and handling of the heroin involved. This is as it should be. The charges and penalties were severe. Counsel for appellant is to be commended for his able defense of a difficult case. But we must also weigh the complained of answers in the context of the cross-examination. We are satisfied that the responses were inadvertent and had little effect, if any, upon the jury's determination of the real issues involved. The trial court granted appellant's counsel wide latitude in his cross-examination and carefully protected appellant's rights when an improper response was elicited. Error, if any, was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Mancino, 468 F.2d 1350 (CA8 1972).

In summary, the evidence as to appellant's guilt, particularly with respect to Count I, was overwhelming. Under these circumstances substantial injury to the rights of the accused must appear before a judgment will be reversed for the erroneous admission of evidence. Lowe v. United States, 389 F.2d 108, 112 (CA8 1968).

Affirmed.[12]

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. In my view, it was error to receive in evidence the "memos" on the lockseal envelopes and to send the "memos" to the jury along with other exhibits. This case is difficult to distinguish from United States v. Brown, 451 F.2d 1231 (CA5 1971), and Sanchez v. United States, 293 F.2d 260 (CA8 1961). Here, as in those cases, it is hard to say that the "memos" did not influence the jury to the defendant's detriment. Had the only information on the lockseal envelopes been the "chem-

---

10. Agent Harker in response to appellant's cross-examination regarding informant Mitchell's felony record and bad reputation referred to Mitchell's association with appellant Parker and defendant Carter.

11. The cross-examination of Agent Harker occupies over 85 pages of the transcript.

12. Other errors alleged by appellant that (1) the court erred in refusing to suppress reference to the fact that the Bureau Office was across the hallway from the courtroom and (2) the court erred in refusing to admit evidence regarding the reasons for dismissal of a state court charge against informant Mitchell several months after the incident on trial, are devoid of merit and do not warrant discussion. In connection with the latter point see, United States v. Madden, 482 F.2d 850 (CA8 1973).

ist's portion of the exhibit," the majority's view would be sustainable. In such event, the exhibits would have properly been admissible under the Business Records Act.

Under the circumstances, I feel that the matter should be remanded for a new trial.

I concur with the majority's disposition of the remaining issues.

## APPENDIX I

### REPORT OF PROPERTY COLLECTED, PURCHASED OR SEIZED

| AGENCIES INVOLVED | 1. NAME OF SUBJECT OR ESTABLISHMENT | 2. FILE NUMBER L4-720014 |
|---|---|---|
| ☒ BNDD ONLY ☐ JOINT CUSTOMS | George Wm. CARTER, et al | IDENTIFIER |
| ☒ JOINT STATE LOCAL ☐ OTHER | 3. REGION OR DISTRICT Region Ten, Des Moines Off. | 4. DATE 6/19/72 |

DESCRIPTION OF: ☒ PURCHASE ☐ SEIZURE ☐ FREE SAMPLE ☐ OTHER

| 5. EXHIBIT NUMBER | 6. ALLEGED DRUGS | 7. MARKS OR LABELS (DESCRIBE FULLY) | 8. APPROXIMATE GROSS QUANTITY | 9. ILLEGITIMATE COST |
|---|---|---|---|---|
| #3 | Heroin | One tin-foil packet containing 18 pink capsules, these containing a white powder, purported Heroin. placed in a glassine bag for protection. | 2.3 | $165.00 (OAF Expended) |

| OTHER PROPERTY | | PLAINTIFFS |
|---|---|---|
| 10. NUMBER | 11. NAME AND DESCRIPTION OF ARTICLES | 12. ESTIMATED VALUE |
| | Exhibit 7 (defendu K) | |
| | Cause No. 72-109 | |
| | JAN 30 1973 | FEB |
| | U. S. District Court | |
| | Southern Dist. of Iowa | |

**13. REMARKS** Exhibit #3 2.3 grams gross weight heroin, purchased by SL220003 from defendants George CARTER and William PARKER for $165.00 Official Funds at Des Moines, Iowa. Evidence examined, weighed, and sealed by Agent Thornton and witnessed by Agent Harker. Agent Thornton maintained custody until placed in BNDD vault on 6/19/72. Removed by same on 6/20/72 and mailed via reg. mail to the Chicago Regional Lab., Chicago, Ill.

| 14. SOURCE |
|---|
| ☒ FOREIGN OR |
| ☐ DOMESTIC |
| ☒ ILLICIT OR |
| ☐ LICIT |

15. A. Dennis W. Harker 16. APPROVED BY REGIONAL DIRECTOR (SIGNATURE) Romaine W. Thornton SAIC.

### LABORATORY EVIDENCE RECEIPT REPORT

| 17. NO. PACKAGES 1 | 18. RECEIVED FROM (SIGNATURE AND DATE) AM & RM — 428148 6-21-72 | 19. TITLE DALE—DES MOINES. |
|---|---|---|
| 20. SEAL ☐ BROKEN ☒ UNBROKEN | 21. RECEIVED BY (SIGNATURE AND DATE) 6-21-72 | 22. TITLE EVIDENCE TECH. |

### LABORATORY ANALYSIS/COMPARISON REPORT

**23. ANALYSIS SUMMARY AND REMARKS**

NO. CAPS RECEIVED: 18
GROSS WEIGHT RECEIVED: 1.56 gms
NET WEIGHT RECEIVED: 0.78 gms
DILUENT: Lactose
ADULTERANTS: Methapyrilene, quinine
DRUG CODE: 9202

7654

| 24. EXHIBIT | 25. ACTIVE DRUG INGREDIENT (ESTABLISHED OR COMMON NAME) | WEIGHT PER UNIT ANALYZED | | | 29. TOTAL NET | 30. RESERVE |
|---|---|---|---|---|---|---|
| | | 26. STRENGTH | 27. MEASURE | 28. UNIT | | |
| 3 | Heroin HCl | 5.1 | % | - | 0.04 gms | 0.43 gms |

| 31. ANALYZED BY FERRIS H. VAN SICKLE | 32. TITLE Forensic Chemist | 33. DATE COMPLETED July 3, 1972 |
|---|---|---|
| 34. APPROVED BY JERRY D. NELSON | 35. TITLE Chief Chemist | 36. LABORATORY LOCATION Chicago |

### SEAL RECORD

| 37. DATE SEALED | 38. IDENTIFICATION ON SEAL | 39. DATE BROKEN | 40. BROKEN BY (SIGNATURE) |
|---|---|---|---|
| 6/19/72 | DWH, RT | 6/27/72 | F. Van Sickle |
| 6/28/72 | 7654-6/28/72 TR3 | | |

BND FORM (MAY 1971) -7 PREVIOUS EDITIONS ARE OBSOLETE. COPY 1 CHEMIST - PROSECUTOR

526

On Petition for Rehearing en Banc

The Court having considered petition for rehearing en banc filed by counsel for appellant and, being fully advised in the premises, it is ordered that the petition for rehearing en banc be, and it is hereby, denied.

Considering the petition for rehearing en banc as a petition for rehearing, it is ordered that the petition for rehearing also be, and it is hereby, denied.*

---

* For separate statement of BRIGHT and ROSS, Circuit Judges, on petition for rehearing en banc, and for dissent of LAY and HEANEY, Circuit Judges, to denial of rehearing en banc, see 8 Cir., 491 F.2d 529.